**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

ROY HORTON,
     Plaintiff,

v.                                    Civil Action No. 1:14-cv-192

S.T. VINSON, Patrolman Clarksburg City
Police Department, sued in his individual and official
capacities; BOB SCOTT, d/b/a Scott's Auto Sales, Inc., sued
in his individual and official capacities; GINA M. RENZELLI,
Assistant State Public Defender, sued in her Individual and Official
Capacities; ZACHARY HOUCHIN, Assistant State Public Defender,
sued in his Individual and Official capacities.
     Defendants.

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to the motions to dismiss filed by Defendant S.T.

Vinson (Docket Nos. 4 and 17); the motions to dismiss filed by Defendant Bob Scott (Docket Nos. 7

and 30); the motion to dismiss filed by Defendants Gina Renzelli and Zachary Houchin (Docket No.

43); and the motion for leave to amend the amended complaint filed by *pro se* Plaintiff Roy Horton

("Plaintiff") (Docket No. 50). On November 21, 2014, United States District Judge Irene M. Keeley

referred this matter to the undersigned. (Docket No. 8.)

### I.    Contentions of the Parties

**A.    Plaintiff's Amended Complaint**

Plaintiff's Amended Complaint is lengthy, but essentially stems from his prosecution in the

Magistrate Court for Harrison County, West Virginia, on charges of Immediate Notification of

Crashes, in violation of W. Va. Code § 17C-4-6; No Insurance, in violation of W. Va. Code § 17D-2A-

3(a), and Obstructing, in violation of W. Va. Code § 61-5-17(a). (Docket No. 13 at 13.) Those

warrants were issued by Magistrate Frank DeMarco upon Criminal Complaints written and sworn to

by Defendant Vinson. Those charges stemmed from Defendant Vinson's investigation into a crash that occurred on December 20, 2012, in Clarksburg, West Virginia. (Id. at 7.)

Plaintiff was arrested on "unrelated charges" on June 13, 2013, and was arraigned on the three (3) charges listed above on June 18, 2013. (Id. at 15-16.) On August 14, 2013, Plaintiff appeared before the Circuit Court for Harrison County, West Virginia, and pleaded guilty to one count of DUI third, a felony, and one count of driving while license revoked for DUI, second, a misdemeanor. He was sentenced to not less than one (1) year nor more than three (3) years for the DUI, and not more than one (1) year in jail, to run concurrently. (Id. at 16.) On September 6, 2013, Plaintiff appeared in the Circuit Court for Randolph County, West Virginia, and pleaded guilty to one count of DUI third, a felony, and one count of driving while license revoked for DUI, second, a misdemeanor. He was sentenced to not less than one (1) year nor more than three (3) years for the DUI, and not more than one (1) year for the misdemeanor. (Id.) Those sentences were to run concurrently to one another but consecutive to Plaintiff's sentences from the Circuit Court for Harrison County. (Id.)

Plaintiff alleges that he was transferred from the Tygart Valley Regional Jail to the Potomac Highlands Regional Jail on December 15, 2013. (Id. at 17.) On January 14, 2014, Plaintiff was physically assaulted by four (4) inmates at Potomac Highlands Regional Jail. According to Plaintiff, he was struck in the head with a broom handle because he continued to complaint of "injustices being inflicted upon him by Defendant Vinson and counsel's failure to get the charges dismissed." (Id.) Plaintiff was taken to the emergency room at the Hampshire County Memorial Hospital and "received eight (8) sutures on the inside of the wound and five (5) sutures on the outside of the wound to his head." (Id. at 17-18.) According to Plaintiff, the injury "has caused a permanent disfigurement to [his] person." (Id. at 18.)

2

On January 21, 2014, Defendant Renzelli, who had been appointed to represent Defendant on the three charges in Magistrate Court, filed a motion to dismiss those charges. (Id.) On February 11, 2014, Plaintiff learned that because of Defendant Renzelli's move to the felony unit of the Public Defender's Office, Defendant Houchin had been appointed to represent him in Magistrate Court. (Id. at 22.) On April 1, 2014, Magistrate Mark Gorby held a hearing on the motion to dismiss filed by Defendant Renzelli. (Id. at 23.) Magistrate Gorby granted the motion as to the obstructing charge and scheduled the charges of immediate notification of crashes and no insurance for trial. (Id. at 24.) On June 18, 2014, Assistant Prosecuting Attorney Shawn Adkins filed a motion to dismiss the remaining charges, arguing that the state could not prove that Defendant was the driver of the vehicle in question. (Id.) Magistrate Gorby granted that motion on June 18, 2014, and the charges were terminated favorably to Plaintiff. (Id.)

Out of that prosecution, Plaintiff alleges the following causes of action in his Amended Complaint:

1.  Malicious prosecution;

2.  Retaliatory prosecution;

3.  Fourth Amendment violation;

4.  Warrants without probable cause determination;

5.  Criminalization of lawful conduct;

6.  Negligence; and

7.  Conspiracy.

(Id. at 25-31.) Overall, Plaintiff alleges that the actions allegedly taken by Defendants were the proximate cause of his assault on January 14, 2014. (Id.) As relief, he seeks compensatory and

punitive damages.  (Id.)

**B.**     **Defendant Vinson's Motion to Dismiss**

Defendant Vinson asserts that Plaintiff's Amended Complaint should be dismissed as it pertains to him for the following reasons:

1.   Officer Vinson is entitled to qualified immunity as he violated none of Plaintiff's constitutional rights;

2.   Plaintiff's sixth cause of action for negligence must be dismissed as W. Va. Code § 29-12A-5(b) precludes the same;

3.   Plaintiff's claims for malicious prosecution and retaliatory prosecution fail as probable cause existed to charge Plaintiff with various crimes;

4.   Plaintiff's conspiracy cause of action is precluded by the one year statute of limitations; and

5.   Plaintiff's Amended Complaint fails to meet the requisite heightened pleading standard.

(Docket No. 18 at 7-25.)

In response, Plaintiff reiterates his allegations and causes of action.  (Docket No. 46.)

In reply, Defendant Vinson argues that to the extent Plaintiff alleges wrongdoing against Magistrate DeMarco, Magistrate DeMarco is not a party to this action.  (Docket No. 49 at 2.) Defendant Vinson further asserts that the exhibits attached to Plaintiff's Amended Complaint make clear that no violation of Plaintiff's Fourth Amendment rights occurred.  (Id. at 3-4.)  Defendant Vinson also states that no violation of Plaintiff's Fourth Amendment rights occurred when his vehicle was searched for insurance information because Defendant Scott had standing to consent to such search.  (Id. at 4-5.)  Finally, Defendant Vinson argues that Plaintiff's Amended Complaint does not assert a conspiracy claim pursuant to 42 U.S.C. § 1983, and therefore a one-year statute of limitations

4

applies to his conspiracy claim, rendering it untimely.  (<u>Id.</u> at 5-6.)

**C.      Defendant Scott's Motion to Dismiss**

Defendant Scott asserts that Plaintiff's Amended Complaint should be dismissed as it pertains to him for the following reasons:

1.      Plaintiff fails to state a cause of action for civil conspiracy;

2.      Plaintiff's conspiracy cause of action is precluded by the one year statute of limitations.

(Docket No. 30-1 at 4-8.)

In response, Plaintiff reiterates his allegations and causes of action.  (Docket No. 46.)

**D.      Defendants Renzelli and Houchin's Motion to Dismiss**

Defendants Renzelli and Houchin assert that Plaintiff's Amended Complaint should be dismissed as it pertains to them for the following reasons:

1.      They are immune from civil liability arising from their representation of Plaintiff pursuant to W. Va. Code § 29-21-20;

2.      To the extent Plaintiff's Amended Complaint alleges claims pursuant to 42 U.S.C. § 1983, they are immune to such claims; and

3.      Plaintiff's claims against them must be dismissed for the additional reasons that they fail to state claims upon which relief may be granted and are improperly pled.

(Docket No. 44 at 6-16.)

In response, Plaintiff asserts that W. Va. Code § 29-21-20 violates both the Supremacy Clause and the Fourteenth Amendment.  (Docket No. 57 at 10-11.)  He further argues that Defendants Renzelli and Houchin "made an intentional effort to convict Plaintiff under the deceptive practice of affording traditional legal representation while conspiring with state official's [sic] to violate Plaintiff's

civil rights." (Id. at 14.) Plaintiff admits that "he has failed to establish that defendants Renzelli and Houchin were either engaged in state action or conspired with state actors to deprive plaintiff of his constitutional rights, his claims against these defendants must be dismissed for failure to state a claim." (Id. at 18.) However, he argues that his Motion for Leave to Amend the Amended Complaint should be granted to allow him to properly set forth the overt acts of his conspiracy claim. (Id. at 18-19.)

In reply, Defendants Renzelli and Houchin assert:

1. Plaintiff admits in his response that he has failed to plead a claim for conspiracy, and therefore, Defendants Renzelli and Houchin are entitled to immunity from Plaintiff's claim pursuant to 42 U.S.C. § 1983;

2. Plaintiff misapprehends the application of W. Va. Code § 29-21-20, which provides immunity to public defenders from civil claims, including Plaintiff's claims of conspiracy and malicious and retaliatory prosecution; and

3. Plaintiff fails to address their arguments regarding Plaintiff's failure to meet applicable pleading standards and dismissal of Plaintiff's allegations of malicious or retaliatory prosecution against Defendant Renzelli, amounting to a concession on those issues.

(Docket No. 58 at 2-6.)

E. **Plaintiff's Motion for Leave to Amend the Amended Complaint**

Plaintiff requests leave to file a Second Amended Complaint to show that "Defendant's [sic] Renzelli and Houchin's intentional misconduct, under color of state law, by virtue of their conspiratorial action with various state official's [sic] deprive Plaintiff of his federal rights." (Docket No. 50 at 2.) In his proposed Second Amended Complaint, Plaintiff has amended his conspiracy claim to include thirty-nine (39) overt acts attributable to the alleged conspiracy.[1] (Docket No. 50-1 at 32-42.) Plaintiff claims that

_____

[1] Plaintiff's first six (6) claims remain unchanged in his proposed Second Amended Complaint.

> [o]n or about December 20, 2012 and in between June 18, 2014 [Defendants] acting under the Color of Law (state law) did in concert with each other lawfully and unlawfully, knowing and intentionally and willfully conspired, confederated, agreed and had a tacit understanding with each other and with others known and unknown state official's [sic] to violate Plaintiff's Civil rights together and individual in violation of the Fourth and Sixth Amendments . . . .

(Id. at 29.) He claims the object of the conspiracy was to "knowingly and intentionally EXTORT Plaintiff for the sum of $5000 to repair Kimberly Woolmaker's vehicle a Red Ford Focus through Plaintiff's Insurance Company and to imprison Plaintiff in the West Virginia Regional Jail Authority on false criminal charges without probable cause when Plaintiff was actually innocent." (Id.)

By Order dated April 15, 2015, the undersigned granted Defendant Renzelli and Houchin's motion for leave to respond out of time to Plaintiff's motion to amend his amended complaint. (Docket No. 60.) Defendants Renzelli and Houchin filed that response on April 22, 2015. (Docket No. 62.) They argue that Plaintiff's motion to amend the amended complaint should be denied for the following reasons:

1. Plaintiff should not be allowed to amend his Amended Complaint as the proposed amendment is in bad fath; and

2. Plaintiff should not be allowed to amend his Amended Complaint as such an amendment would be futile and would not correct the deficiencies in the Amended Complaint.

(Id. at 4-10.)

## II. Standard of Review

### A. *Motion to Dismiss*

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright

& Arthur R. Miller, Federal Practice and Procedure § 1356 (1999)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.  In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (<u>Id</u>).  (citations omitted), to one that is "plausible on its face," <u>id</u>. at 570, rather than merely "conceivable," <u>id.</u>  Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I.DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir.2003) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir.2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678

(2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.    *Motion to Amend***

Plaintiff seeks leave to amend his Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), which states: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Supreme Court has recognized that "the grant or denial of an opportunity to amend is within the discretion of the District Court." Foman v. Davis, 371 U.S. 178, 182 (1962).

A court should deny leave to amend "when at least one of three circumstances exists: (1) 'the amendment would be prejudicial to the opposing party;' (2) 'there has been bad faith on the part of the moving party;' or (3) 'the amendment would have been futile.'" Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013) (quoting Laber v. Harvey, 438 F.3d 404, 426-27 (4th Cir. 2006) (internal quotation marks omitted)).

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." Laber, 438 F.3d at 427. With respect to its nature, "[a] common example of a prejudicial amendment is one that 'raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant.'" Id. (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986)) (alterations omitted). As to whether the amendment would prejudice the opposing party, "the further [a] case [has] progressed . . ., the more likely it is that the amendment will prejudice the defendant." Laber, 438 F.3d at 427. Finally, "[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying

standards." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011) (internal quotation marks omitted).

**C.      *42 U.S.C. § 1983***

42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Claims brought under § 1983 have two elements.  First, a plaintiff must show that he or she was deprived of a right "secured by the Constitution and the laws" of the United States.  Lugar v. Edmonson Oil Co., 457 U.S. 922, 930 (1982) (internal citations omitted).  Then, the plaintiff must demonstrate that the individual who deprived him or her of such rights acted under color of state law. Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).  While § 1983 creates no rights in and of itself, the statute provides a "method for vindicating federal rights elsewhere conferred." Kendall v. City of Chesapeake, Va., 174 F.3d 437, 440 (4th Cir. 1999).

### III.      Analysis

In his Amended Complaint, Plaintiff clearly states that he is bringing suit for damages under 42 U.S.C. § 1983 for "violations of the First, Fourth and Sixth amendments to the United States Constitution, Malicious and Retaliatory Prosecution and Conspiracy." (Docket No. 13 at 5.)  He also asserts that this Court has "supplemental jurisdiction over Plaintiff's state law torts of Negligence,

Malicious and Retaliatory Prosecution claims." (Id.) The Court has the obligation to hold *pro se*

complaints to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner,

404 U.S. 519, 520 (1972). Accordingly, where applicable, the undersigned has considered Plaintiff's

claims under both 42 U.S.C. § 1983 and West Virginia law.

*A.    Defendant Vinson*

### 1.    Claims Under 42 U.S.C. § 1983

As an initial matter, Defendant Vinson asserts that he is entitled to qualified immunity as to

Plaintiff's federal claims. (Docket No. 18 at 7.) "Qualified immunity protects government officials

from suit for damages when their conduct does not violate a 'clearly established' constitutional right."

Evans v. Chalmers, 703 F.3d 636, 646 (4th Cir. 2012) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818

(1982)). To survive dismissal based on qualified immunity, "a plaintiff must (1) allege a violation of

a right (2) that is clearly established at the time of the violation." Id. (citing Pearson v. Callahan, 555

U.S. 223, 231 (2009). If a plaintiff fails to allege that a right has been violated, the official "is hardly

in need of any immunity and the analysis ends right then and there." Abney v. Coe, 493 F.3d 412, 415

(4th Cir. 2007).

### a.    Malicious Prosecution

Plaintiff's first claim for relief alleges that Defendant Vinson "maliciously instigated false

Criminal Charges" against him by seeking warrants for Plaintiff's arrest that were not supported by

probable cause. (Docket No. 13 at 25.)

Precedent from the Fourth Circuit makes clear that "there is no such thing as a '§ 1983

malicious prosecution' claim." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). Rather, it

is "simply a claim founded on a Fourth Amendment seizure that incorporates elements of the

analogous common law tort of malicious prosecution–specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. . . . It is not an independent cause of action." Id. at 262. As discussed *infra*, Plaintiff raises several Fourth Amendment claims regarding his prosecution on charges of Immediate Notification of Crashes, No Insurance, and Obstructing. Accordingly, to the extent that Plaintiff is attempting to assert a § 1983 malicious prosecution claim against Defendant Vinson, the undersigned recommends that such be dismissed.

### b.    Fourth Amendment Claims

The heart of Plaintiff's Amended Complaint focuses on alleged violations of Plaintiff's Fourth Amendment rights. In his third claim for relief, Plaintiff alleges that Defendant Vinson withheld or misrepresented information to Magistrate DeMarco to obtain warrants for Plaintiff's arrest on the three (3) charges. (Docket No. 13 at 26-28.) Plaintiff's fourth claim for relief, entitled "Warrants Without Probable Cause Determination," alleges that the warrants were issued without a probable cause determination. (Id. at 28.) Plaintiff's fifth cause of action, entitled "Criminalization of Lawful Conduct," alleges that Defendant Vinson violated Plaintiff's First and Fourth Amendment rights by obtaining warrants that were not supported by probable cause and by criminalizing Plaintiff's silence by seeking a warrant for Obstructing. (Id. at 29-30.) Plaintiff also claims that it was illegal to obtain insurance information from his vehicle when it was at Defendant Scott's auto shop for repair. (Id. at 27.) The undersigned has considered each of these in turn.

### 1.    Withheld or Misrepresented Information

"[A]n officer contravenes the Fourth Amendment when he procures a search warrant through the use of false statements, whereby a magistrate would not have otherwise found probable cause." Unus v. Kane, 565 F.3d 103, 124 (4th Cir. 2009) (citing Franks v. Delaware, 438 U.S. 154, 155-56

12

(1978)). The initial step in analyzing a <u>Franks</u> claim is "determining whether the affiant made a false statement 'deliberately' or with 'reckless disregard for the truth.'" <u>Id.</u> (quoting <u>Miller v. Prince George's Cnty., Md.</u>, 475 F.3d 621, 627 (4th Cir. 2007)). The Fourth Circuit has stated that

> [r]eckless disregard can be established by evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.

<u>Miller</u>, 475 F.3d at 627 (internal quotation marks omitted). Allegations of "negligence or innocent mistake," however, do not amount to a Fourth Amendment violation. <u>Id.</u> at 627-28.

Plaintiff first claims that Defendant Vinson falsely stated that he was able to obtain a license plate number from a witness of the crash. (Docket No. 13 at 26.) However, the witness statement completed by Marc Jackson, which Plaintiff has attached to the Amended Complaint, states that Mr. Jackson followed a Jeep Wrangler and "got it [sic] license #." (Docket No. 13-1 at 2.) Accordingly, Defendant Vinson accurately stated in the Criminal Complaint that a witness obtained a plate number, and no Fourth Amendment violation exists as to that statement.

Plaintiff then alleges that Defendant Vinson omitted from the Complaint and withheld from Magistrate DeMarco the fact that Marc Jackson did not witness the alleged crash on December 20, 2012. (Docket No. 13 at 26.) Mr. Jackson provided a witness statement regarding what he observed at the scene of the accident, where it was apparent that one vehicle had struck another. (Docket No. 13-1 at 2, 4.) In the Complaint, Defendant Vinson refers to Mr. Jackson as a "witness of the crash." (<u>Id.</u> at 9.) Because Mr. Jackson did witness the fact that one vehicle had struck another, he was a witness to the crash. Accordingly, Defendant Vinson did not misrepresent this fact in the Criminal Complaint, and no Fourth Amendment violation exists as to that statement.

Third, Plaintiff claims that Defendant Vinson withheld the fact that he acquired Plaintiff's information when he ran the wrong registration number through the police department's database. (Docket No. 13 at 26.) However, none of the documents attached to Plaintiff's Amended Complaint reference this happening. Rather, the documents show that Defendant Vinson obtained from Mr. Jackson a plate number bearing OXB 497. (Docket No. 13-1 at 4.) In fact, Plaintiff states elsewhere in his Amended Complaint that his vehicle bears that registration. (Docket No. 13 at 15.) Accordingly, there is no misrepresentation and no Fourth Amendment violation.

Plaintiff then alleges that Defendant Vinson withheld the fact that he could not determine who was driving the suspect vehicle on December 20, 2012, or after speaking with Plaintiff on April 12, 2013. (Docket No. 13 at 26.) However, by not including this information, Defendant Vinson was not making a false statement. Rather, he was making no statements. Accordingly, because no false statement was made, no Fourth Amendment violation occurred.

Next, Plaintiff claims that Defendant Vinson misrepresented "'that he was able to locate Plaintiff due to Randolph county Deputy Sheriff Swisher had pulled the vehicle over in January 2013 and obtained pictures for him of the vehicle.'" (Docket No. 13 at 27.) Again, this is not a false statement. Deputy Sheriff Swisher conducted a traffic stop on the suspect vehicle on January 11, 2013, based upon Defendant Vinson's BOLO. (Docket No. 13-1 at 6.) During that traffic stop, Plaintiff was arrested for "3rd Offense Driving revoked for DUI." (Id.) Defendant Vinson learned of the traffic stop from Deputy Sheriff Swisher. (Id. at 8.) Accordingly, Plaintiff was able to locate Plaintiff because of the traffic stop conducted by Deputy Sheriff Swisher. As such, no false statement was made, and no Fourth Amendment violation occurred.

Plaintiff then claims that Defendant Vinson withheld information regarding a telephone call

with Plaintiff, in which Plaintiff stated that Deputy Swisher had provided him the pictures of Plaintiff's Jeep "which did not show Plaintiff's vehicle had sustained any sustainable damages to believe Plaintiff's vehicle had been involved in an accident." (Docket No. 13 at 27.) Plaintiff also claims that Defendant Vinson withheld the facts as to how he obtained Plaintiff's insurance information. (Id.) However, withholding information does not equal making false statements. Accordingly, Plaintiff has not demonstrated that a Fourth Amendment violation occurred.

In sum, the documents Plaintiff has attached to his Amended Complaint show that all statements made by Defendant Vinson were true and accurate. Furthermore, by alleging that Defendant Vinson failed to include certain statements, it is impossible for Plaintiff to demonstrate that there was a misrepresentation. Accordingly, Plaintiff has failed to show a Fourth Amendment violation, and his third cause of action should be dismissed.

## 2.      Probable Cause Determination

Probable cause requires an affiant to show "'a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Grubbs, 547 U.S. 90, 95 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). As the Supreme Court has noted, "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." United States v. Leon, 468 U.S. 897, 914 (1984). The Leon Court further wrote:

> Deference to the magistrate, however, is not boundless. It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based. . . . Second, the courts must also insist that the magistrate purport to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." . . . A magistrate failing to "manifest that neutrality and detachment

> demanded of a judicial officer when presented with a warrant application" and who
> acts instead as "an adjunct law enforcement officer" cannot provide valid authorization
> for an otherwise unconstitutional search.

Id. (internal citations omitted). Furthermore, the Court's precedents regarding probable cause "require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 564 (1971).

As an initial matter, Plaintiff appears to assert that a probable cause determination did not even occur. However, such a claim is belied by the warrants he has attached to his Amended Complaint. Magistrate Frank DeMarco executed all three (3), indicating that he engaged in a determination and found probable cause to exist. (Docket No. 13-3 at 1-3.) As noted above, Leon indicates that great deference is to be provided to Magistrate DeMarco's probable cause determination. Leon, 468 U.S. at 914. While this does not preclude inquiry into false statements included in an affidavit, id., the undersigned has already found that Defendant Vinson did not present false information to Magistrate DeMarco.

In any event, probable cause existed for Magistrate DeMarco to issue warrants for all three (3) charges.[2] For Immediate Notification of Crashes, W. Va. Code § 17C-4-6 states:

> The driver of a vehicle involved in a crash resulting in injury to or death of any person
> or total property damage to an apparent extent of $1,000 or more shall immediately by
> the quickest means of communication, give notice of such crash to the local police
> department if such crash occurs within a municipality, otherwise to the office of the
> county sheriff or the nearest office of the West Virginia State Police.

As the documents Plaintiff has attached to his Amended Complaint show, a Jeep bearing the same

---

[2] In his fourth cause of action, Plaintiff makes no allegation that probable cause did not exist for Immediate Notification of Crashes. Nevertheless, the undersigned has considered it.

license plate number as Plaintiff's Jeep was involved in a vehicle accident on December 20, 2012.

(Docket No. 13-1 at 2-8.) When Defendant Vinson asked Plaintiff if he was driving the Jeep on that

day, Plaintiff responded by saying, "I don't know, I was probably drunk, but anyone could have had

my vehicle, I don't remember." (Docket No. 13 at 10.) Furthermore, there is no indication that

Plaintiff notified any police department of the accident. When faced with this information, it was

logical for Magistrate DeMarco to find probable cause for this charge.

> As to No Insurance, W. Va. Code § 17D-2A-3(a) states:

> Every owner or registrant of a motor vehicle required to be registered and licensed in this state shall maintain security as hereinafter provided in effect continuously throughout the registration or licensing period except in case of a periodic use or seasonal vehicle, in which case the owner or registrant is required to maintain security upon the vehicle only for the portion of the year the vehicle is in actual use. As used in this section, a periodic use or seasonal vehicle means a recreational vehicle, antique motor vehicle, motorcycle or other motor vehicle which is stored part of the year and used seasonally.

Here, Defendant Vinson learned from Titan Insurance that the insurance on Plaintiff's Jeep had been

cancelled on September 20, 2012, three (3) months before the accident occurred on December 20,

2012. (Docket No. 13-1 at 8.) Nothing in the record suggests that Plaintiff's Jeep was insured on

December 20, 2012. Accordingly, Magistrate DeMarco properly found that probable cause existed

for this charge.

> Finally, as to Obstructing:

> (a) A person who by threats, menaces, acts or otherwise forcibly or illegally hinders or obstructs or attempts to hinder or obstruct a law-enforcement officer, probation officer or parole officer acting in his or her official capacity is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $50 nor more than $500 or confined in jail not more than one year, or both fined and confined.

> (c) A person who, with intent to impede or obstruct a law-enforcement officer in the

> conduct of an investigation of a felony offense, knowingly and willfully makes a materially false statement is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $25 nor more than $200, or confined in jail for five days, or both fined and confined.

W. Va. Code § 61-5-17, amended by 2015 W. Va. Laws H.B. 2607. Here, Plaintiff told Defendant Vinson that he had valid insurance on the Jeep and that he would get the insurance information for Defendant Vinson. (Docket No. 13 at 11.) However, Plaintiff's insurance had been cancelled on September 20, 2012, and he never obtained the insurance information for Defendant Vinson. Plaintiff alleges that he was advised by counsel not to talk to or provide insurance information to Defendant Vinson. (Id.) Plaintiff knew that Defendant Vinson had called him regarding this information. (Id.) At the very least, Plaintiff should have informed Defendant Vinson that he would no longer be discussing the issue per the advice of counsel. Given this, Magistrate DeMarco properly found that probable cause existed to charge Plaintiff with obstructing.

In sum, Plaintiff has not demonstrated that the warrants issued for his arrest for Immediate Notification of Crashes, No Insurance, and Obstructing were not supported by probable cause. As noted above, Defendant Vinson did not include false statements in his affidavit supporting these warrants. Furthermore, nothing suggests that Magistrate DeMarco did not review the information presented by Defendant Vinson as a neutral and detached magistrate. See Leon, 468 U.S. at 914. Accordingly, Plaintiff's claims regarding probable cause fail as a matter of law and should be dismissed as to Defendant Vinson.

### 3. Search of Plaintiff's Vehicle

Plaintiff's last Fourth Amendment claim is that his Fourth Amendment rights were violated by the search of his Jeep for insurance information. (Docket No. 13 at 12.) As an initial matter, Defendant Vinson did not conduct the search; accordingly, Defendant Vinson could not have violated

18

Plaintiff's Fourth Amendment rights. However, Plaintiff claims that Defendant Vinson requested that Defendant Scott obtain Plaintiff's insurance information and that, by so asking, violated Plaintiff's Fourth Amendment rights when Defendant Scott searched the vehicle. (Id.) To determine whether a violation occurred, the undersigned must determine whether Defendant Scott had standing to object or consent to searching.

As the Third Circuit has stated, "[c]ases from other circuits suggest that whether the driver of a car has the reasonable expectation of privacy necessary to show Fourth Amendment standing is a fact-bound question dependent on the strength of his interest in the car and the nature of his control over it; ownership is not necessary." United States v. Baker, 221 F.3d 438, 442 (3d Cir. 2000). One case cited by the Third Circuit was United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994), in which the Fourth Circuit held that a defendant who was the driver of a rental car did not have standing to contest a search because he was not listed as an authorized driver on the rental contract and because the defendant did not have permission to drive the car from the person who rented it. In Baker, the court noted that while the defendant did not own the car, "he had substantial control over it insofar as he had borrowed it from a friend and had been driving it for four to six weeks." Baker, 221 F.3d at 442. With these facts, the Third Circuit concluded that the defendant had standing to object to the search of the vehicle. Id. at 443.

Here, on March 25, 2013, Plaintiff had his Jeep towed to Defendant Scott's shop for repairs after someone had put rice and anti-freeze in the gas tank. (Docket No. 13 at 9.) On April 13, 2013, Defendant Vinson asked Defendant Scott to obtain Plaintiff's registration and insurance information. (Id. at 12.) Defendant Scott had a key to Plaintiff's Jeep and used it to obtain the requested information. (Id.) These facts suggest that Defendant Scott had possession of Plaintiff's Jeep by

Plaintiff's permission.

Here, Defendant Scott is not asserting standing to object to the search of the vehicle. However, the undersigned finds that the principles discussed above are applicable. Defendant Scott had possession of Plaintiff's Jeep for three (3) weeks. The decision in <u>Baker</u> indicates that Defendant Scott would have had authority during this time to object to a search of Plaintiff's vehicle. By having such authority, Defendant Scott also possessed authority to consent to a search. Accordingly, Plaintiff's Fourth Amendment rights were not violated when Defendant Scott searched his vehicle for insurance information upon Defendant Vinson's request.

### b. Retaliatory Prosecution

As his second claim for relief, Plaintiff alleges that Defendant Vinson prepared Criminal Complaints for his arrest on the charges of Immediate Notification of Crashes, No Insurance, and Obstructing "in retaliation for Plaintiff's refusal to talk to him and Plaintiff's Insurance policy being cancelled thereby preventing Defendant Vinson from EXTORTING Plaintiff for the Sum of $5000." (Docket No. 13 at 25.)

As to constitutional claims for retaliatory prosecution, the Supreme Court has stated:

> Like any other plaintiff charging official retaliatory action, the plaintiff in a retaliatory-prosecution claim must prove the elements of retaliatory animus as the cause of injury, and the defendant will have the same opportunity to respond to a prima facie case by showing that the action would have been taken anyway, independently of any retaliatory animus. What is different about a prosecution case, however, is that there will always be a distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge. Demonstrating that there was no probable cause for the underlying criminal charge will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution, while establishing the existence of probable cause will suggest that prosecution would have occurred even without a retaliatory motive. This alone does not mean, of course, that a <u>Bivens</u> or § 1983 plaintiff should be required to plead and prove no probable cause, but it does mean that litigating probable cause will be highly

20

likely in any retaliatory-prosecution case, owing to its powerful evidentiary significance.

Hartman v. Moore, 547 U.S. 250, 260-61 (2006). The Court went on to hold that an absence of probable cause must be "pleaded and proven" as an element of the plaintiff's case. Id. at 265-66. The undersigned has already found that probable cause existed to issue warrants for Plaintiff's arrest on the charges of Immediate Notification of Crashes, No Insurance, and Obstructing. Accordingly, because Plaintiff cannot demonstrate a lack of probable cause to support his retaliatory prosecution claim under § 1983, it should also be dismissed as to Defendant Vinson.

### c.      First Amendment Claims

In his fifth cause of action, Plaintiff alleges that his First Amendment rights were violated when he refused to speak to Defendant Vinson and Defendant Vinson subsequently obtained a warrant for Plaintiff's arrest on an Obstructing charge. (Docket No. 13 at 29.)

"Congress shall make no law respecting an establishment of religion, or promoting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend. I. Here, Defendant Vinson placed no restrictions on Plaintiff's right to speak. Rather, Plaintiff alleges that he refused to speak with Defendant Vinson. (Docket No. 13 at 29.) Furthermore, the undersigned has already found that probable cause existed to arrest Plaintiff on the charge of Obstructing. Accordingly, Plaintiff's First Amendment rights were not violated, and this claim should also be dismissed.

### d.      Civil Conspiracy

As his seventh and last cause of action, Plaintiff alleges that Defendant Vinson, along with Defendants Scott, Renzelli, and Houchin, conspired to violate Plaintiff's First, Fourth, and Sixth

Amendment rights. (Docket No. 13 at 31.) He claims that the purpose and object of the conspiracy was to "EXTORT Plaintiff for the Sum of $5000 to repair Kimberly Woolmakers vehicle . . . through Plaintiff's Insurance Company and to imprison Plaintiff in the West Virginia Regional Jail Authority on false criminal charges." (Id.)

In order to establish a civil conspiracy under § 1983, a plaintiff must show that the defendants acted jointly in concert, and that some overt act was taken in furtherance of the conspiracy which resulted in the deprivation of a constitutional right. See Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992); see also Hinkle v. City of Clarksburg, WV, 81 F.3d 416, 421 (4th Cir. 1996). However, nowhere in Plaintiff's Amended Complaint does he allege facts that suggest that the defendants agreed with each other to take actions that deprived Plaintiff of his constitutional rights. Furthermore, as thoroughly discussed above, Plaintiff was not deprived of his First and Fourth Amendment rights during the proceedings for the three (3) charges Defendant Vinson lodged against him. Plaintiff claims that his Sixth Amendment rights were violated through the alleged conspiracy, but he does not provide any details about how they were violated. Accordingly, the undersigned finds that Plaintiff has failed to state a claim for civil conspiracy under § 1983.

In sum, Plaintiff has failed to state a claim under § 1983 against Defendant Vinson upon which relief could be granted. Plaintiff has failed to allege that Defendant Vinson violated any of his constitutional rights during his investigation. Accordingly, Defendant Vinson "is hardly in need of any immunity," Abney, 493 F.3d at 415, and his motion to dismiss Plaintiff's Amended Complaint should be granted.

### 2. Claims Under State Law

#### a. Malicious and Retaliatory Prosecution

"'To maintain an action for malicious prosecution it is essential to prove (1) that the prosecution was malicious, (2) that it was without reasonable or probable cause, and (3) that it terminated favorably to plaintiff.'" Syl. pt. 1, <u>Preiser v. MacQueen</u>, 177 W. Va. 273, 273, 352 S.E.2d 22, 22 (1985) (quoting Syl. pt. 1, <u>Lyons v. Davy-Pocahontas Coal Co.</u>, 75 W. Va. 739, 84 S.E. 744 (1915)). Furthermore, "a plaintiff who brings a cause of action alleging that he or she was criminally prosecuted in retaliation for exercising a right protected by the state or federal constitution must plead and prove as an element of his or her cause of action that there was an absence of probable cause to support the criminal charge." <u>Jarvis v. W. Va. State Police</u>, 227 W. Va. 472, 479, 711 S.E.2d 542, 549 (2010). As thoroughly discussed above, the undersigned has already determined that probable cause existed to issue warrants for Plaintiff's arrest on the charges of Immediate Notification of Crashes, No Insurance, and Obstructing. Accordingly, because probable cause existed, Plaintiff's claims of malicious and retaliatory prosecution under state law are also without merit and should be dismissed as to Defendant Vinson.

### b. Negligence

As his sixth claim for relief, Plaintiff claims that Defendant Vinson "negligently did cause and was the proximate cause of a BOLO being issued for malicious purposes, in bad faith or in a wanton or reckless manner for Plaintiff's Jeep bearing WV REG: OXB497 that was based on material false statements in his Police (101) Report." (Docket No. 13 at 30.) He claims that as a result of such negligence, he was "arrested, arraigned, forced to post bond, convicted and imprisoned on unrelated charges that Defendant Vinson was the proximate cause of." (<u>Id.</u>)

Defendant Vinson asserts that he is immune from liability on Plaintiff's negligence claim pursuant to W. Va. Code § 29-12A-5(b), which states:

An employee of a political subdivision is immune from liability unless one of the following applies:

(1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;

(2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

(3) Liability is expressly imposed upon the employee by a provision of this code.

As an initial matter, the parties do not dispute that the Clarksburg Police Department falls within the definition of a political subdivision. W. Va. Code § 29-12A-3(c) provides:

"Political subdivision" means any county commission, municipality and county board of education; any separate corporation or instrumentality established by one or more counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns; a combined city-county health department created pursuant to article two, chapter sixteen of this code; public service districts; and other instrumentalities including, but not limited to, volunteer fire departments and emergency service organizations as recognized by an appropriate public body and authorized by law to perform a government function: Provided, That hospitals of a political subdivision and their employees are expressly excluded from the provisions of this article.

Defendant Vinson is an employee of the Clarksburg Police Department; accordingly, he is immune from liability unless one of the three exceptions noted above applies.

At no time in his Amended Complaint, particularly in his sixth cause of action, does Plaintiff allege that Defendant Vinson was acting outside the scope of his employment as a police officer for Clarksburg, West Virginia. In his sixth claim, he states that Defendant Vinson negligently caused a BOLO to be issued for Plaintiff's Jeep. Defendant Vinson could not have even caused a BOLO to be issued outside of the scope of his employment.

Plaintiff alleges that Defendant Vinson acted "for malicious purposes, in bad faith or in a

wanton or reckless manner." (Docket No. 13 at 30.) He bases this allegation on his claim that Defendant Vinson included false statements in his police report. The undersigned has already found that the statements made by Defendant Vinson in his report were true and accurate. Accordingly, the undersigned finds that there is no basis for finding that Defendant Vinson acted "with malicious purpose, in bad faith, or in a wanton or reckless manner" so as to make him liable to Plaintiff under W. Va. Code § 29-12A-5(b)(2).

Plaintiff does not allege that liability is expressly imposed upon Defendant Vinson by another provision of the West Virginia Code. In sum, Plaintiff's Amended Complaint makes no mention of Defendant Vinson acting outside the scope of his employment, and he has not established that Defendant Vinson acted with malice, in bad faith, or in a wanton or reckless manner. Accordingly, the undersigned finds that W. Va. Code § 29-12A-5(b) applies to provide Defendant Vinson from Plaintiff's claim of negligence, and so Plaintiff's sixth claim for relief should also be dismissed.

### c.    Civil Conspiracy

Under West Virginia law, a "civil conspiracy is not a *per se*, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)." Dunn v. Rockwell, 225 W. Va. 43, 57, 689 S.E.2d 255, 269 (2009). Such a conspiracy

> is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.

Dixon v. Am. Indus. Leasing Co., 162 W. Va. 832, 834, 253 S.E.2d 150, 152 (1979).

As noted above, Plaintiff has failed to allege any facts to support a finding that the defendants

agreed to act together "to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Furthermore, as thoroughly discussed above, Plaintiff's First, Fourth, and Sixth Amendment rights were not violated. Accordingly, the undersigned finds that Plaintiff has failed to state a claim for civil conspiracy under West Virginia law, and the same should be dismissed.

**B.**     ***Defendant Scott***

Defendant Scott is only named in Plaintiff's seventh cause of action, alleging conspiracy. The undersigned has already found that Plaintiff has failed to state a claim for conspiracy under both § 1983 and West Virginia law, and refers to the discussion above. Accordingly, Plaintiff's claims for conspiracy should also be dismissed against Defendant Scott.

**C.**     ***Defendants Renzelli and Houchin***

**1.        Claims Under State Law**

Defendants Renzelli and Houchin claim that they are immune from civil liability for Plaintiff's state law claims pursuant to W. Va. Code § 29-21-20. That provision states:

> Any attorney who provides legal representation under the provisions of this article under appointment by a circuit court, family court or by the Supreme Court of Appeals, and whose only compensation therefor is paid under the provisions of this article, shall be immune from liability arising from that representation in the same manner and to the same extent that prosecuting attorneys are immune from liability.

Because the immunity is the same as that provided to prosecutors under common law, the following commentary from the Supreme Court of Appeals of West Virginia is helpful:

> Prosecutors enjoy absolute immunity from civil liability for prosecutorial functions such as, initiating and pursuing a criminal prosecution, presenting a case at trial, and other conduct that is intricately associated with the judicial process. . . . It has been said that absolute prosecutorial immunity cannot be defeated by showing that the prosecutor acted wrongfully or even maliciously, or because the criminal defendant ultimately prevailed on appeal or in a habeas corpus proceeding.

> The absolute immunity afforded to prosecutors attaches to the functions they perform, and not merely to the office. Therefore, it has been recognized that a prosecutor is entitled only to qualified immunity when performing actions in an investigatory or administrative capacity.

Mooney v. Frazier, 225 W. Va. 358, 370 n.12, 693 S.E.2d 333, 345 n.12 (quoting Franklin D. Cleckley, et al., Litigation Handbook on West Virginia Rules of Civil Procedure, § 8(c), at 213 (3d ed. 2008)). As noted above, Defendants Renzelli and Houchin are both employed as full-time public defenders in Harrison County, West Virginia. They are therefore covered by W. Va. Code § 29-21-20. Accordingly, the undersigned must determine if both, during their representations of Plaintiff, engaged in conduct associated with their positions as public defenders or with the judicial process.

Construing Plaintiff's Amended Complaint in a light most favorable to him, Mylan Labs, Inc., 7 F.3d at 1134, the undersigned finds that the actions Plaintiff ascribes to Defendants Renzelli and Houchin were all directly associated with their roles as public defenders. For example, Defendant Renzelli communicated with Plaintiff to prepare his defense, appeared with him in court, received discovery and shared such with Plaintiff, and ultimately prepared and filed a motion to dismiss all three (3) charges against Plaintiff. (Docket No. 1 at 17-18.) Defendant Houchin was assigned to represent Plaintiff when Defendant Renzelli was reassigned to felony cases. Defendant Houchin corresponded with Plaintiff, discussed strategy with him, and represented him at the hearing on the motion to dismiss previously filed by Defendant Renzelli. (Id. at 22-24.) Nowhere in Plaintiff's Amended Complaint does he allege any conduct outside the scope of Defendant Renzelli's and Houchin's duties as public defenders. Given this, the undersigned finds that Defendants Renzelli and Houchin must be afforded absolute immunity under W. Va. Code § 29-21-20 for any civil liability arising from their

representation of Plaintiff.[3]

Even if Defendants Renzelli and Houchin did not enjoy absolute immunity, Plaintiff's state law claims against them would fail. Plaintiff names Defendant Renzelli in his first two causes of action, asserting claims of malicious and retaliatory prosecution. As an initial matter, it is clear that in order to be held liable for such, a defendant must have actually attempted to ***prosecute*** the plaintiff. Here, as an Assistant Public Defender, Defendant Renzelli defended Plaintiff against prosecution. Additionally, Plaintiff does not make any allegations against her in those claims; rather, he simply lists her name as someone who is responsible for the injuries he suffered at the Potomac Highlands Regional Jail.[4] Defendant also names Defendants Renzelli and Houchin in his seventh cause of action, alleging a civil conspiracy. However, Plaintiff's Amended Complaint is devoid of any allegations showing that Defendants Renzelli and Houchin acted in concert with Defendants Vinson and Scott.

In sum, the undersigned finds that Defendants Renzelli and Houchin are absolutely immune for civil liability arising from their representation of Plaintiff for any claims he raises under state law.

---

[3] In his response to Defendant Renzelli and Houchin's motion, Plaintiff alleges that this immunity violates the Supremacy Clause of the Constitution by conflicting with the Supreme Court's holding in Tower v. Glover, 467 U.S. 914 (1984). (Docket No. 57 at 10-11.) As noted *infra* in the body of this Report and Recommendation, the Tower Court held that "state public defenders are not immune from liability under § 1983 for intentional misconduct, 'under color of' state law, by virtue of alleged conspiratorial action with state officials that deprives their clients of federal rights." Id. at 923. Defendants Renzelli and Houchin do not dispute such exception to public defenders' immunity under § 1983. However, it is clear that as to Plaintiff's state law claims of conspiracy and malicious and retaliatory prosecution, Defendants Renzelli and Houchin enjoy immunity under W. Va. Code § 29-21-20.

[4] Plaintiff was incarcerated in the Potomac Highlands Regional Jail because he was convicted and sentenced on his Harrison County August 14, 20143, pleas of guilty to DUI third and driving while licensed revoked for DUI and his September 6, 2013, Randolph County pleas of guilty to DUI third and driving while revoked for DUI second. It is a complete *non sequitur* for Plaintiff to contend he was in jail and assaulted on January 14, 2014, because of the three (3) unrelated misdemeanor charges filed by Defendant Vinson with Magistrate DeMarco.

Even if they were not entitled to immunity, Plaintiff has failed to state claims upon which relief can be granted against them under state law. Accordingly, Plaintiff's state law causes of action for malicious and retaliatory prosecution and conspiracy must be dismissed as to Defendants Renzelli and Houchin.

**2.      Claims Under 42 U.S.C. § 1983**

Defendants Renzelli and Houchin assert that they are immune to Plaintiff's claims of malicious[5] and retaliatory prosecution, as well as conspiracy, under § 1983 by virtue of their positions as public defenders. (Docket No. 44 at 8-10.) In support of their argument, they cite Polk County v. Dodson, 454 U.S. 312 (1981), in which the Supreme Court held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Id. at 325. The Court noted that

> a lawyer representing a client is not, by virtue of being an officer of the court, a state court "under color of state law" within the meaning of § 1983. In our system a defense lawyer characteristically opposes the designated representatives of the State. The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness. But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interests of his client."

Id. at 318. Defendants Renzelli and Houchin understand, however, that such immunity is limited, and acknowledge that "state public defenders are not immune from liability under § 1983 for intentional misconduct, 'under color of' state law, by virtue of alleged conspiratorial action with state officials that deprives their clients of federal rights." Tower v. Glover, 467 U.S. 914, 923 (1984).

In his response to Defendant Renzelli and Houchin's motion, Plaintiff states:

Plaintiff did not allege that any of these defendants were employed by or doing

---

[5] The undersigned has already noted that "there is no such thing as a '§ 1983 malicious prosecution' claim." Lambert, 223 F.3d at 262.

business on behalf of the State, nor does he allege that their acts or omissions were caused by the exercise of any right or privilege created by the state. Additionally, there is no allegation in the amended complaint that the state had any responsibility for Defendant Renzelli or Houchin, nor are there any facts in the first amended complaint suggesting that these defendants could be fairly labeled as state actors. Moreover, although Plaintiff claims numerous times throughout the course of his amended complaint that these defendants conspired to deprive him of various rights protected by the Constitution, such claims amount to no more than "naked" assertions of conspiracy insufficient to sustain an action under 1983. Accordingly, plaintiff admits he has failed to establish that defendants Renzelli and Houchin were either engaged in state action or conspired with state actors to deprive plaintiff of his constitutional rights, his claims against these defendants must be dismissed for failure to state a claim.

(Docket No. 57 at 18.) Given Plaintiff's admission, the undersigned recommends that Plaintiff's claims under § 1983, as alleged in the Amended Complaint, be dismissed as to Defendants Renzelli and Houchin.

## D.     *Motion to Amend the Amended Complaint*

In his response to Defendant Renzelli and Houchin's motion to dismiss, Plaintiff goes on to claim that, because he failed to establish a conspiracy claim under § 1983 against Defendants Renzelli and Houchin, he "filed the motion for Leave to Amend the Amended Complaint pursuant to Rule 15(a)(2) Fed. R. Civ. P., with 'Proposed Amended Complaint' in order to properly state a claim in 'The Conspiracy' count setting forth the 'Overt Acts.'" (Docket No. 57 at 18.) In his proposed Second Amended Complaint, Plaintiff has amended his conspiracy claim to include thirty-nine (39) overt acts attributable to the alleged conspiracy.[6] (Docket No. 50-1 at 32-42.)

As noted above, a court should deny leave to amend "when at least one of three circumstances exists: (1) 'the amendment would be prejudicial to the opposing party;' (2) 'there has been bad faith

_____

[6] Plaintiff's first six (6) claims remain unchanged in his proposed Second Amended Complaint.

on the part of the moving party;' or (3) 'the amendment would have been futile.'" <u>Scott v. Family Dollar Stores, Inc.</u>, 733 F.3d 105, 121 (4th Cir. 2013) (quoting <u>Laber v. Harvey</u>, 438 F.3d 404, 426-27 (4th Cir. 2006) (internal quotation marks omitted)). Defendants Renzelli and Houchin assert that Plaintiff should not be allowed to amend his Amended Complaint because the proposed amendment is both in bad faith and is futile. (Docket No. 62 at 4-10.)

"Bad faith amendments are those which may be abusive or made in order to secure some ulterior tactical advantage." <u>GSS Props., Inc. v. Kendale Shopping Ctr., Inc.</u>, 119 F.R.D. 379, 381 (M.D.N.C. 1988). Furthermore, "[p]arties have an obligation to introduce, at the earliest stage of the litigation as possible, the matters upon which they want to rely in supporting their claim or defense." <u>Id.</u>

In his proposed Second Amended Complaint, Plaintiff adds further allegations to allege that Defendants Renzelli and Houchin acted in concert with state officials to have Plaintiff convicted of criminal charges, and to extort money from Plaintiff. For example, Plaintiff alleges that Defendant Renzelli, Assistant Prosecuting Attorney Andrea Roberts, Magistrate Mark Gorby, and Defendant Vinson organized an attempt for a witness to the hit-and-run accident identify Plaintiff. (Docket No. 50-1 at 13.) He further alleges that Defendant Renzelli, APA Roberts, or Magistrate Gorby "should have moved to dismiss or dismissed the charges," but instead they worked together to offer Plaintiff an opportunity to plead guilty to one of the charges to "relieve Defendant Vison and Defendant Bob Scott d/b/a Scott's Auto Sales Inc., of civil liability for violation of Plaintiff's Fourth Amendment rights and to imprison Plaintiff in the West Virginia Regional Jail Authority." (<u>Id.</u>)

Plaintiff also provides more detail concerning the April 1, 2014, hearing on the motion to dismiss filed by Defendant Renzelli and argued by Defendant Houchin. He alleges that Defendant

Houchin worked together with Defendant Vinson, APA Roberts, Magistrate Gorby, and Defendant Renzelli to conduct a "fake hearing." (Id. at 21.) He argues that Defendant Houchin only had a yellow legal pad at the hearing, and "did not even have the motion that he was allegedly suppose[d] to be arguing." (Id.) Plaintiff further alleges that before Magistrate Gorby allowed him to speak on his own behalf, he "looked to the back of the courtroom for approval." (Id.) According to Plaintiff, Magistrate Gorby worked in collusion with the others to imprison Plaintiff by "intentionally abus[ing] his discretion" and denying Plaintiff's oral motion to dismiss. (Id. at 22.)

It is clear that Plaintiff was aware of these new allegations when he filed his original Complaint in November 2014, as these events occurred at least six (6) months prior to the filing of the original Complaint. However, Plaintiff only included these new allegations upon learning of the limitations of asserting § 1983 claims against Defendants Renzelli and Houchin given their status as public defenders. Upon review of the record, the undersigned finds that Plaintiff has chosen to add these allegations to his proposed Second Amended Complaint only to "plead around" the immunity from § 1983 claims provided to Defendants Renzelli and Houchin by the Supreme Court's decision in Polk County. Plaintiff had an obligation to introduce, "at the earliest stage of the litigation as possible, the matters upon which [he] want[ed] to rely in supporting [his] claim[s]." GSS Props., Inc., 119 F.R.D. at 381. Here, Plaintiff has admitted that the allegations in his Amended Complaint did not state a § 1983 claim upon which relief could be granted against Defendants Renzelli and Houchin; accordingly, the undersigned finds that his proposed Second Amended Complaint is in bad faith. Plaintiff should not be permitted to file a Second Amended Complaint which contains allegations that were known to him when he filed his original Complaint.

Defendants Renzelli and Houchin also argue that Plaintiff should not be allowed to file a

Second Amended Complaint because such amendment would be futile. (Docket No. 62 at 8-10.) As noted above, "[f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle, 637 F.3d at 471(internal quotation marks omitted).

Plaintiff's Amended Complaint and proposed Second Amended Complaint are substantially identical. As noted above, the only change to the proposed Second Amended Complaint were the additional allegations discussed above and an inclusion of a list of "Overt Acts" under Plaintiff's conspiracy claim. This list is nothing more than a list of allegations Plaintiff makes earlier in the proposed Second Amended Complaint, and they are almost identical to allegations he makes in his Amended Complaint. (Docket No. 50-1 at 29-42.)

As noted above, to establish a civil conspiracy under § 1983, a plaintiff must show that the defendants acted jointly in concert, and that some overt act was taken in furtherance of the conspiracy which resulted in the deprivation of a constitutional right. See Hafner, 983 F.2d at 577; see also Hinkle, 81 F.3d at 421. Here, Plaintiff's proposed Second Amended Complaint does not cure the deficiencies that exist in his Amended Complaint. Nowhere in the proposed document does Plaintiff clearly allege any agreement to conspire that existed between Defendants, nor does he provide a factual basis for alleging conspiratorial acts. Furthermore, Plaintiff notes that different individuals were involved in the conspiracy within the same section of the proposed Second Amended Complaint. For example, at one point, he states that Defendants were the members of the conspiracy, but then later adds Magistrate Frank DeMarco, APA Roberts, Magistrate Gorby, and APA Shawn Adkins. Plaintiff continues to rely on the "mere possibility of misconduct" to sustain his proposed Second Amended Complaint; however, such speculation does not show entitlement to relief. See Iqbal, 556 U.S. at 679.

Accordingly, because the same issues exist with Plaintiff's proposed Second Amended Complaint, the undersigned also finds that it would be futile to allow Plaintiff to amend.

In sum, the undersigned finds that Plaintiff's proposed Second Amended Complaint is both brought in bad faith and is futile. Accordingly, Plaintiff should not be permitted to file an amended pleading in this matter, and his motion for leave to amend should be denied.

## IV.    Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that:

- Defendant S.T. Vinson and Defendant Bob Scott's first motions to dismiss (Docket Nos. 4 and 7) be **DENIED AS MOOT;**[7]

- Defendant S.T. Vinson's motion to dismiss the Amended Complaint (Docket No. 17) be **GRANTED;**

- Defendant Bob Scott's motion to dismiss the Amended Complaint (Docket No. 30) be **GRANTED;**

- Defendants Renzelli and Houchin's motion to dismiss the Amended Complaint (Docket Np. 43) be **GRANTED;**

- Plaintiff's Motion for Leave to Amend the Amended Complaint (Docket No. 50) be **DENIED**; and that

- Plaintiff's Amended Complaint (Docket No. 13) be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the

---

[7] The undersigned has not discussed Defendant Vinson and Scott's first motion to dismiss in the body of the Report and Recommendation, as they were addressed to Plaintiff's original Complaint. After these motions were filed, Plaintiff filed his Amended Complaint. "The general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect." Young v. City of Mt. Ranier, 238 F.3d 567, 573 (4th Cir. 2001). Accordingly, "motions directed at superseded pleadings are to be denied as moot." Blount v. Carlson Hotels, No. 3:11-CV-452, 2011 WL 6098697, at *1 (W.D.N.C. Dec. 6, 2011).

Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record herein and to mail a copy to the *pro se* Plaintiff at his last known address by certified mail, return receipt requested.

DATED: May *14*, 2015

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE