IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROY HORTON,

      Plaintiff,

v.               //   CIVIL ACTION NO. 1:14CV192
                       (Judge Keeley)

S.T. VINSON, BOB SCOTT,
GINA M. RENZELLI, and
ZACHARY HOUCHIN,

      Defendants.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS

Pending before the Court is the Report and Recommendation ("R&R") (Dkt. No. 64) of Magistrate Judge John S. Kaull regarding two motions to dismiss filed by the defendant, Bob Scott ("Scott") (Dkt. Nos. 7, 30), two motions to dismiss filed by the defendant, S.T. Vinson ("Vinson") (Dkt. Nos. 4, 17), one motion to dismiss filed by the defendants, Gina M. Renzelli ("Renzelli") and Zachary Houchin ("Houchin") (Dkt. No. 43), and a motion to amend the amended complaint filed by the plaintiff, Roy Horton ("Horton") (Dkt. No. 50).

The first motions to dismiss filed by Scott and Vinson refer to the original complaint, which was superseded by the amended complaint. The Court therefore **DENIES AS MOOT** those motions (Dkt. Nos. 4, 7). See Young v. City of Mt. Ranier, 238 F.3d 567, 573 (4th Cir. 2001) ("[A]n amended pleading supersedes the original pleading, rendering the original pleading of no effect.").

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Furthermore, for the reasons that follow, the Court **ADOPTS** the R&R, **GRANTS** Renzelli and Houchin's motion to dismiss, **GRANTS** Scott's motion to dismiss, **GRANTS** Vinson's motion to dismiss, and **DENIES** Horton's motion to amend the amended complaint.

## PROCEDURAL HISTORY

On October 15, 2014, Horton filed a complaint in the Circuit Court of Harrison County, West Virginia, in which he alleged claims arising under both 42 U.S.C. § 1983 and West Virginia state law against Vinson and Scott (Dkt. No. 1-2 at 1). He alleged violations of his First, Fourth, Fifth, and Fourteenth Amendment rights, as well as claims for malicious prosecution and civil conspiracy. Id. On November 14, 2014, Vinson and Scott jointly filed a notice of removal, in which they invoked this Court's federal question jurisdiction (Dkt. No. 1 at 1-2).

Following removal, Vinson and Scott each filed a motion to dismiss the complaint on November 21, 2014 (Dkt. Nos. 4 and 7). On December 3, 2014, Horton gave notice of his intent to amend his complaint (Dkt. No. 11), and, on December 18, 2014, filed an amended complaint (Dkt. No. 13). Horton's amended complaint included Renzelli and Houchin as defendants, added a cause of action for retaliatory prosecution, and amended the relief sought. Id. at 2.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

On December 23, 2014, in lieu of filing a responsive pleading, Vinson moved to dismiss the amended complaint (Dkt. No. 17). On January 5, 2015, Scott also filed a motion to dismiss the amended complaint (Dkt. No. 30), followed by Renzelli and Houchin's motion on January 27, 2015 (Dkt. No. 43). Horton then sought leave to amend his amended complaint to add allegations of intentional misconduct on the part of Renzelli and Houchin (Dkt. No. 50 at 2). Following this District's protocol, the Court referred this case to the Honorable John S. Kaull, United States Magistrate Judge, for report and recommendation (Dkt. No. 8).

On May 14, 2015, Magistrate Judge Kaull issued his R&R, in which he recommended that the Court (1) dismiss with prejudice Horton's amended complaint, (2) deny Horton's motion to amend the amended complaint as futile and in bad faith, (3) deny as moot the motions to dismiss the original complaint filed by Vinson and Scott, and (4) grant the motions to dismiss the amended complaint filed by Vinson, Scott, Renzelli, and Houchin. Horton filed timely objections to the conclusions of law and statements of fact in the R&R (Dkt. No. 69).

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS

This Court has conducted a de novo review of the portions of the R&R to which Horton has objected, finds his objections are without merit, and therefore adopts the R&R in its entirety.[1]

### FACTUAL BACKGROUND

As it must, the Court accepts the factual allegations in Horton's complaint as true for purposes of the motions to dismiss. Zak v. Chelsea, 780 F.3d 597, 601 (4th Cir. 2015)(citing Matrix Capital Mgmt. Fund, LP v. Bearing Point, Inc., 576 F.3d 172, 176 (4th Cir. 2009)).

## I.  The Hit and Run Incident

On December 20, 2012, in downtown Clarksburg, West Virginia, a green Jeep struck an unoccupied red Ford Focus belonging to Kimberly Woolmaker ("Woolmaker"), causing heavy front end damage estimated at $5,000 (Dkt. No. 13 at 7).  Marc Jackson ("Jackson") was driving through the area when he saw the Focus in the middle of the street, and the green Jeep sitting on the sidewalk.  Id. Jackson left and reported what he had seen to a firefighter, who

---

[1]  When reviewing a magistrate judge's report and recommendation made pursuant to 28 U.S.C. § 636, the court must review de novo only the portion to which an objection is timely made.  28 U.S.C. § 636(b)(1)(C).  As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous."  See Webb v. Califano, 468 F.Supp. 825 (E.D. Cal. 1979).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

was extinguishing a fire a few blocks away. Id. at 7, 20. Jackson then returned to the scene of the accident, where he noticed that the green Jeep had been moved from the sidewalk to the front of the Focus. Id. at 7. Jackson knocked on the window of the Jeep and asked the driver if he was okay, but the driver was nonresponsive and appeared to be unconscious. Id. at 20. Jackson sat behind the Jeep until it pulled out, and then followed it in order to obtain its license plate number. Id. at 7.

Defendant Vinson, who is a patrolman with the Clarksburg Police Department, reported to the scene at 9:51 P.M. Id. He interviewed Woolmaker, who stated that she did not see what had happened to her vehicle. Id. An emblem with a "Wrangler" logo was found in the debris near Woolmaker's car. Id. Jackson, whom Vinson also interviewed, later recalled giving Vinson the license plate number of the Jeep, although he was unable to recall the exact number he provided to Vinson. Id. at 20. Jackson nevertheless recalled telling Vinson that the driver was male, although he did not remember the driver's race. Id. at 19, 20.

Three days later, on December 23, 2012, Vinson prepared a police report, alleging that a green Jeep Wrangler, driven by an unknown person but belonging either to Horton or Steve Allen, was

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

involved in the incident.[2]  Id.  Vinson alleged that Jackson had provided him with the license plate number of the Jeep, which he had run through the police database to obtain Horton's name.  Id. Vinson issued a BOLO ("be on the lookout") alert for the Jeep, and allegedly attempted to contact Horton.  Id. at 8.

## II.  Horton's Arrest in Elkins

On January 11, 2013, in Elkins, West Virginia, Deputy Swisher ("Swisher") of the Randolph County Sheriff's Department was on patrol when he saw a green Jeep Wrangler parked on Scott Street. Id.  Swisher was aware of Vinson's BOLO alert, and had been looking for a vehicle matching the description of the vehicle allegedly involved in the hit and run incident in Clarksburg.  Id.  Swisher followed Horton's Jeep to the grocery store, activated his lights, and performed a traffic stop.  Id.

Horton was driving the Jeep when Swisher stopped it.  He provided Swisher with his vehicle registration and proof of insurance, but informed Swisher that he did not have a valid driver's license.  Id.  After being informed of his vehicle's alleged involvement in the hit and run, Horton also advised Swisher that he had not been in Harrison County since November 20, 2012,

---

[2] Jackson describes the Jeep as "green," as does Vinson in part of his report.  In other places in Vinson's report, however, he refers to a "red Jeep"  (Dkt. No. 13 at 7).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

when he had been arrested for a DUI.  Id. at 9.  In attempting to
ascertain whether Horton had a valid driver's license, Swisher
learned that his license had been revoked for DUI.  As a result,
Swisher charged Horton with driving on a revoked license for DUI
3rd.  Id.  Horton was subsequently arrested on that charge, and
posted bond on February 26, 2013.  Id.

### III. Vinson's Attempts to Obtain Horton's Insurance Information

After an unknown individual put rice and antifreeze in his gas
tank, on March 25, 2013, Horton had his Jeep towed to Scott's Auto
Sales Inc., owned by defendant Scott, for repairs.  Id.  While
Horton's Jeep was still being repaired, Vinson advised Horton on
April 12, 2013, of the December 20, 2012, hit and run incident in
Clarksburg involving his vehicle.  Id. at 9-10.  Horton told Vinson
he had not been in Clarksburg since November 20, 2012, and that it
was not his vehicle that had been involved in the incident.  Id. at
10.  He also informed Vinson that Swisher had stopped him on
January 11, 2013, pursuant to the BOLO alert, and that his Jeep was
not damaged.  Id.  When Vinson asked Horton if he had been driving
his Jeep on December 20, 2012, Horton replied, "I don't know, I was
probably drunk, but anyone could have had my vehicle . . . I don't
remember."  Id.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Vinson informed Horton that, if he could not remember who was driving his Jeep at the time of the hit and run, then he would have to provide his insurance information so that Woolmaker could repair her vehicle.  Id.  After Horton advised Vinson that Woolmaker should sue him for the damages instead, Vinson responded that he could prove that Horton's Jeep was involved, and that, as the owner of the vehicle, Horton was responsible for Woolmaker's damages, whether or not he had been the driver at the time of the accident. Id.  Vinson also told Horton that, because he could not place him at the scene, he would not charge Horton with immediate notification of crashes so long as Horton provided his insurance information.  Id.  Horton informed Vinson that, although he had valid insurance on his Jeep, it was currently at Scott's Auto for repair work, and he would try to get a ride to Scott's Auto to retrieve the information.  Id. at 10-11.

Following his discussion with Vinson, Horton contacted James Hawkins, his attorney in the Randolph County DUI case, who advised him to not speak further to Vinson, and to not provide the requested insurance information.  Id. at 11.  Later that same day, Vinson left Horton a message on his answering machine, stating that if Horton did not provide him with the insurance information, he would seek a warrant for Horton's arrest on charges of immediate

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

notification of crashes and obstructing.  Id.  Vinson advised that
he would ask M&M Bonding to arrest Horton for violating his
conditions of release on bail stemming from a previous DUI arrest.
Id.

On April 12, 2013, while waiting for Horton to provide his
insurance information, Vinson contacted Swisher, who confirmed that
he had conducted a traffic stop on Horton's Jeep.  Id.  Swisher
provided Vinson with photographs he had taken of Horton's Jeep, and
told Vinson that he had arrested Horton on February 13, 2013, for
driving on a revoked license.  Id.

**IV.  Scott's Search of Horton's Automobile**

On April 13, 2013, Vinson contacted Scott's Auto Sales and
spoke with the owner, defendant Scott.[3]  Id. at 12.  At Vinson's
request, Scott unlocked both the Jeep and the glove compartment,
located Horton's registration and insurance information, and
provided that information to Vinson over the telephone.[4]  Id.

---

[3] Vinson's recollection is that he spoke with "Eric," but
Scott reported to Investigator Patrick McFarland of the Harrison
County Public Defender Corporation that he actually spoke to
Vinson, and that he had never employed a person named Eric.  Id. at
12.

[4] On January 29, 2014, Scott spoke with Investigator McFarland
regarding Vinson's request to obtain Horton's insurance and
registration information from the vehicle.  Id. at 19.  Scott
advised Investigator McFarland that he located the insurance
information from inside Horton's vehicle, at Vinson's request, and

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Vinson then contacted Titan Insurance Company and discovered that Horton's insurance card, although facially valid until September 7, 2013, had been cancelled on September 20, 2012.  Id. at 13.  Vinson continued his attempts to contact Horton until Horton's telephone service was interrupted for non-payment on April 17, 2013.  Id.

## V.     The Criminal Complaint

On April 25, 2013, Vinson prepared a criminal complaint that charged Horton with (1) immediate notification of crashes, in violation of W. Va. Code § 17C-4-6; (2) no insurance, in violation of W. Va. Code § 17D-2A-3(a); and, (3) obstructing, in violation of W. Va. Code § 61-5-17(a).  Id.; see also Dkt. No. 13-1 at 9.

Harrison County Magistrate Frank DeMarco ("Magistrate DeMarco") found probable cause on all three charges and issued warrants for Horton's arrest (Dkt. No. 13 at 14, 15; Dkt. No. 13-1 at 9).[5]  Vinson faxed the warrants to Swisher on April 26, 2013 (Dkt. No. 13 at 15).   On June 18, 2013, while Horton was

------

provided it to Vinson.

[5] Although the criminal complaint charged Horton with violating W. Va. Code § 17D-2A-3(a) for no insurance, the warrant stated the statutory language of W. Va. Code § 17D-2A-3(d) (Dkt. No. 13-1 at 9; Dkt. No. 13-3 at 2).  Similarly, although Horton was charged in the criminal complaint with violating W. Va. Code § 61-5-17(a), the warrant issued for obstructing quoted the statutory language of W. Va. Code § 61-5-17(c) (Dkt. No. 13-1 at 9; Dkt. No. 13-3 at 1).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

incarcerated at the Tygart Valley Regional Jail on unrelated charges, he was arrested on the three warrants issued by Magistrate DeMarco.  Id. at 13, 15-16.  Horton later was released on those charges on a $7,500 personal recognizance bond.  Id. at 16.

## VI.  Renzelli's Representation of Horton

On June 21, 2013, defendant Renzelli, an assistant public defender for the Clarksburg Public Defender Corporation, advised Horton that she had been appointed to represent him on the three charges listed on the criminal complaint.  Id. On October 2, 2013, Horton appeared for a pre-trial hearing, where he refused a proposed plea deal.  Id. at 17.  Magistrate Mark Gorby then set his case for trial on February 4, 2014.[6]  Id.  Renzelli provided discovery to Horton on October 16, 2013.  On November 5, 2013, Horton wrote Renzelli a letter discussing how the criminal

---

[6] In the interim, Horton pleaded guilty in the Circuit Court of Harrison County to (1) one count of DUI 3rd and (2) one count of driving while license revoked for DUI 2nd in Case No. 13-F-94 (Dkt. No. 13 at 16).  These were the DUI charges for which Horton was arrested on November 20, 2012.  He was sentenced to 1-3 years for DUI 2nd, and not more than 1 year for driving while license revoked, to run concurrently.  Id.  Horton also pleaded guilty in the Circuit Court of Randolph County to (1) one count of DUI 3rd, and (2) one count of driving while licensed revoked for DUI 2nd, the offenses for which he was arrested by Swisher.  Id.  He was sentenced to 1-3 years for DUI 3rd, and not more than 1 year for driving while license revoked.  Id.  Those sentences were to run concurrently, but consecutive to the sentences imposed in Harrison County.  Id.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

complaint did not establish probable cause to support the warrants issued by Magistrate DeMarco. Id. at 17. On November 13, 2013, Renzelli advised Horton that she was already in the process of preparing a motion to dismiss the complaint, and that she would send Horton a copy of the motion once it was filed. Id. On January 21, 2014, Renzelli filed her motion to dismiss, which Horton now criticizes for failing to raise the essential issues in his case. Id. at 18. Two days later, Renzelli and Assistant Prosecuting Attorney Andrea Roberts ("APA Roberts") filed a joint motion to continue the trial, stating that the parties needed additional time to prepare for trial given the newly filed motion to dismiss. Id. Magistrate Gorby granted the motion to continue and scheduled a video conference hearing on February 6, 2014. Id.

On December 15, 2013, Horton was transferred from the Tygart Valley Regional Jail to the Potomac Highlands Regional Jail, where, on January 14, 2013, he was assaulted by four fellow inmates "because of [his] continued voicing of injustices being inflicted upon him by Defendant Vinson and counsel's failure to get the charges dismissed."[7] Id. at 17. Horton was transported to the

---

[7] Horton does not explain how he returned to Tygart Valley, given his assertion that he posted bond after his June 18, 2013, arrest. Id. at 16. The Court assumes that Horton had begun serving his sentences in the Harrison County and Randolph County DUI cases. See supra n. 5.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION**
**[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

emergency room, where he was treated for blunt force trauma and
received thirteen sutures above his left eye. Id. at 17-18.
Horton alleges that Potomac Highlands improperly investigated his
assault. He also asserts that he was not permitted to file a
formal complaint with either the jail or the West Virginia State
Police. Id. at 18. Moreover, he claims that Vinson and Renzelli
proximately caused the assault and his resulting disfigurement.
Id. at 25.

On February 5, 2014, the day before his scheduled video
conference hearing, Horton contacted Renzelli and advised her again
that he would not plead guilty to any of the counts in the criminal
complaint, which, in his opinion, lacked probable cause. Id. at
20. On February 6, 2014, the day of his hearing, Horton was taken
to an eye specialist in Petersburg, West Virginia, to receive care
for severe headaches and a breakage in the retina of his eye
stemming from the January 14, 2014, attack. Id. at 21. Staff at
Potomac Highlands later told Horton that the video conference had
not been scheduled with authorities at the jail. Id. Horton also
alleges that the February 6, 2014, hearing was continued by
Magistrate Gorby after Renzelli and APA Roberts filed a

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

"pretextual" motion to continue because the State needed to investigate a potential conflict of interest.[8]  Id.

After hearing that Magistrate Gorby would be unable to reschedule his hearing for at least two months, Horton accused Renzelli of improperly arguing the issues in her motion to dismiss, and working in collusion with APA Roberts to get him to plead guilty.  Id.  Renzelli hung up on Horton, and they have never spoken to each other again.  Id.  When Horton tried to call Renzelli on February 11, 2014, he was advised that Renzelli had been transferred from misdemeanor to felony cases, and that Houchin was now representing him.  Id. at 22.

**VII. Houchin's Representation of Horton**

Horton wrote Houchin a letter on March 6, 2014, in which he reiterated his belief that the criminal complaint insufficiently alleged the statutory elements of the offenses of immediate notification of crashes, no insurance, and obstructing.  Id.  On March 20, 2014, Houchin responded, advising Horton that he was

---

[8] APA Roberts was concerned that one of the attorneys in her previous office in Preston County had represented Horton in a prior proceeding.  Id. at 21.  Whether APA Roberts actually had a conflict of interest is unclear; Assistant Prosecuting Attorney Shawn Adkins was assigned to represent the State in her stead sometime in Spring of 2014.  Id. at 22.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

reviewing the case file and preparing for the hearing on the pending motion to dismiss. <u>Id.</u> at 23.

On April 1, 2014, Horton was transported to the Harrison County Detention Center in anticipation of the hearing on his motion to dismiss before Magistrate Gorby. <u>Id.</u> Although the hearing was scheduled for 11:30 A.M., Horton was not brought in to the courtroom until 2:45 P.M. <u>Id.</u> Despite being advised that the delay was due to a civil trial that had taken longer than expected, Horton alleges that his hearing "was had . . . while [he] was held in the holding cell as a means to try and prevent [him] from knowing that Ms. Renzelli actually argued her motion to dismiss even though she had been officially removed from the case and reassigned to felony cases." <u>Id.</u>

Horton bases his belief that the hearing was held in his absence on several facts. First, he saw attorney Jack Clark, who had previously represented him, leave the rear of Magistrate Gorby's courtroom "looking over his shoulder to see if [Horton] had saw [sic] him leave." <u>Id.</u> Second, when he entered the courtroom, everything was "set up for an already in progress court proceeding." <u>Id.</u> Third, Vinson and Assistant Prosecuting Attorney Shawn Adkins ("APA Adkins") were sitting at the prosecutor's table with paperwork skewed across the table. <u>Id.</u> Fourth, Renzelli, APA

Roberts, and a "tall white gentleman," all of whom were "dressed in black," were sitting against the rear wall of the courtroom.  <u>Id.</u> Fifth, the defense table had been cleared of all paper, except for a yellow legal pad held by Houchin.  <u>Id.</u>  According to Horton, "[i]t was oblivious [sic] that a court hearing was ongoing and it had been stopped to bring me into the courtroom . . . [p]laintiff's fate had been already decided."  <u>Id.</u>

Houchin argued the motion to dismiss prepared by Renzelli, following which Horton was permitted to argue the motion <u>pro se</u>. <u>Id.</u> at 23-24.  Magistrate Gorby granted the motion to dismiss as to obstructing, but denied the motion to dismiss as to the other two charges, and scheduled a jury trial for June 19, 2014.  <u>Id.</u> at 24.

On June 18, 2014, APA Adkins filed a motion to dismiss the two remaining charges, stating that he could not proceed with prosecution because the State "cannot prove the necessary elements of the crimes alleged, [n]amely that Defendant Roy Horton was the driver of the vehicle in question."  <u>Id.</u>  Magistrate Gorby granted the State's motion to dismiss, and dismissed the two remaining charges against Horton.  <u>Id.</u>

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

### STANDARD OF REVIEW

## I.  Pro Se Pleadings

Because Horton is proceeding pro se, the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594 (1972) (per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). Even a pro se complaint is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which the plaintiff could prevail. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him, nor should it "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

## II.  Motion to Dismiss

In reviewing the sufficiency of a complaint pursuant to Fed. R. Civ. P. 12(b)(6), a district court must accept the factual allegations in the complaint as true. Zak, 780 F.3d at 601. While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (1986).

In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Twombly, 550 U.S. at 547, 127 S.Ct. at 1960). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Dismissal under 12(b)(6) is appropriate if the face of the complaint "clearly reveals the existence of a meritorious affirmative defense," such as qualified immunity. Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (quoting Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011) (internal citations omitted)).

**APPLICABLE LAW**

Pursuant to 42 U.S.C. § 1983, a plaintiff may bring a claim against a person who, under color of "statute, ordinance,

regulation, custom, or usage," deprives his rights under the United States Constitution or other laws.  42 U.S.C. § 1983 (2012).  A plaintiff seeking to bring a claim under § 1983 must meet two requirements: (1) that the conduct complained of was committed by a person acting under color of law; and, (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured to him by the Constitution and the laws of the United States.  Wirth v. Surles, 562 F.2d 319, 321 (4th Cir. 1977) (citing Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473 (1961)).

Generally, a public employee acts under color of law "while acting in his official capacity or while exercising his responsibilities pursuant to state law."  Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (quoting West v. Atkins, 487 U.S. 42, 50, 108 S.Ct. 2250, 2255 (1988)).  "The 'under color of state law' requirement has greater impact where the defendant is a private party not employed by the state."  Conner, 42 F.3d at 223.

Individual officials performing discretionary functions are immune from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); Covey v. Assessor of Ohio Cty., 777 F.3d 186, 195 (4th Cir. 2015).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

As an initial matter, taking the well-pleaded facts in the amended complaint as true, the Court must identify whether any statutory or constitutional rights were violated and then ask whether those rights were clearly established at the time of the violation. Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 816 (2009); Hunter v. Town of Mocksville, N.C., __ F.3d __, 2015 WL 3651646, at *4 (4th Cir. 2015). For a right to be clearly established, "every 'reasonable official would have understood that what he is doing violates that right.'" West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014) (quoting Ashcroft v. al-Kidd, __ U.S. __, 131 S.Ct. 2074, 2083 (2011)). A clearly established right, however, "need not be one with respect to which all judges on all courts agree." Owens v. Baltimore City State's Att'y Office, 767 F.3d 379, 395 (4th Cir. 2014). The Court, in its discretion, may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." M.C. ex rel. Crawford v. Amrhein, 598 F.App'x. 143, 146 (4th Cir. 2015) (citing Pearson, 555 U.S. at 236).

"Qualified immunity protects public officials from suit when the state of the law is such that they would not have known that their conduct violates statutory or constitutional rights." Owens,

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

767 F.3d at 395 (citing al-Kidd, 131 S.Ct. at 2083). Qualified immunity does not, however, shield officials who have acted incompetently or knowingly have violated the law. Id. at 395 (internal citations omitted).

"A government official asserting a qualified immunity defense bears the burden of proof and persuasion." Robinson v. Lioi, 536 F.App'x. 340, 342 (4th Cir. 2013) (citing Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003)). Although a defendant may present a qualified immunity defense in a Rule 12(b)(6) motion, such a defense "faces a formidable hurdle" and is usually unsuccessful. Owens, 767 F.3d at 396 (internal citations omitted). "The plaintiff's complaint will not be dismissed as long as he provides sufficient detail about his claim to show that he has a more-than-conceivable chance of success on the merits." Id. (citing Twombly, 550 U.S. at 570). If the defendant does not prevail on his qualified immunity defense at the 12(b)(6) stage, he may reassert it on summary judgment. Tobey v. Jones, 706 F.3d 379, 393-94 (4th Cir. 2013) (citing Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834 (1996)).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

## LEGAL ANALYSIS

### I. <u>Defendant Vinson</u>

Vinson, who was named in each count in the amended complaint, has asserted (1) qualified immunity as to Horton's § 1983 claims and (2) immunity pursuant to W. Va. Code § 29-12A-5(b) as to Horton's negligence claim (Dkt. No. 18 at 6). Vinson also argues that (1) Horton's conspiracy claim is untimely, (2) the entire complaint is insufficiently pleaded, and (3) Horton has failed to allege the elements of malicious prosecution and retaliatory prosecution. <u>Id.</u> The Court will address each of Vinson's arguments in turn, and when it is unclear whether Horton intended to plead a cause of action under § 1983 or state law, the Court will address both.

#### A. Qualified Immunity

##### 1. Malicious Prosecution

Horton alleges that, on April 25, 2013, Vinson "maliciously instigated false criminal charges" against him, causing warrants to be issued for his arrest without probable cause (Dkt. No. 13 at 25). Horton contends that he was arrested, maliciously prosecuted, and that the charges terminated in his favor. <u>Id.</u> To the extent that Horton intends to plead such a cause of action under § 1983, Fourth Circuit precedent establishes that "there is no such thing

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

as a '§ 1983 malicious prosecution' claim."[9] <u>Lambert v. Williams</u>,
223 F.3d 257, 262 (4th Cir. 2000). Instead, a plaintiff must base
such a claim on a Fourth Amendment seizure "that incorporates
elements of the analogous common law tort of malicious
prosecution–specifically, the requirement that the prior proceeding
terminate favorably to the plaintiff." <u>Id.</u> Malicious prosecution
under § 1983 is not an independent cause of action. <u>Id.</u> Vinson
has established that Horton did not have a constitutional or
statutory right under § 1983, thus entitling him to immunity. The
Court therefore **GRANTS** Vinson's motion to dismiss and **DISMISSES
WITH PREJUDICE** Count One of the amended complaint insofar as it
purports to allege a claim under § 1983.

### 2.    Retaliatory Prosecution

Horton alleges that Vinson prepared a criminal complaint
charging him with immediate notification of crashes, no insurance,
and obstructing "without probable cause," in retaliation for
Horton's refusal to provide his insurance information to Vinson
(Dkt. No. 13 at 25). Horton was arrested, arraigned, and

---

[9] Horton refers solely to the state law tort of malicious
prosecution in his response to Vinson's motion to dismiss, leading
the Court to believe that he did not intend to plead such a cause
of action under § 1983 (Dkt. No. 46 at 1-5). Nonetheless, the
Court addresses it out of an abundance of caution.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

prosecuted on the "false criminal charges" until the case terminated in his favor on June 18, 2014. Id.

The First Amendment precludes governmental officials "from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256, 126 S.Ct. 1695, 1701 (2006) (citing Crawford-El v. Britton, 523 U.S. 574, 592, 118 S.Ct. 1584 (1998)). "In an action for malicious prosecution after an acquittal, a plaintiff must show that the criminal action was begun without probable cause for charging the crime in the first place . . . ." Id. at 258.

Courts generally afford "great deference" to a magistrate's determination of probable cause because "[r]easonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause. . . ." United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 2416 (1984). Nonetheless, the Court may inquire into "the knowing or reckless falsity of the affidavit on which [the probable cause] determination was based . . ." and insist that the magistrate perform his neutral and detached function. Id. The affiant must provide a judicial officer issuing a warrant with enough information "to support an independent judgment that probable cause exists for the warrant."

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

<u>Whitely v. Warden, Wyo. State Penitentiary</u>, 401 U.S. 560, 564, 91 S.Ct. 1031, 1035 (1971).

Magistrate DeMarco found that probable cause existed as to each count charged in Vinson's criminal complaint, and issued warrants accordingly (Dkt. No. 13-3). Horton argues that Vinson provided false information in his affidavit, thus rendering Magistrate DeMarco's probable cause determination unreliable (Dkt. No. 13 at 14-15). He also contends that Magistrate DeMarco never made a probable cause determination. <u>Id.</u> at 15.

### a. Misrepresentations and Omissions[10]

A law enforcement officer "contravenes the Fourth Amendment when he procures a search warrant through the use of false statements, whereby a magistrate would not have otherwise found probable cause. <u>Unus v. Kane</u>, 565 F.3d 103, 124 (4th Cir. 2009) (citing <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56, 98 S.Ct. 2674 (1978)). When assessing a <u>Franks</u> claim, the Court must first determine whether the averring officer "deliberately" or with "reckless disregard for the truth" made a false statement. <u>Id.</u> (citing <u>Miller v. Prince George's Cty, Md.</u>, 475 F.3d 621, 627 (4th

---

[10] This aspect of Horton's retaliatory prosecution claim overlaps with his third cause of action for fourth amendment violations, and the Court will therefore discuss both counts together (Dkt. No. 13 at 26).

Cir. 2007)); <u>see</u> <u>also</u> <u>United States v. Colkley</u>, 899 F.2d 297, 301
(4th Cir. 1990) (including within the purview of <u>Franks</u> omissions
designed to mislead–or in reckless disregard of whether they would
mislead–the magistrate)**.**

The plaintiff establishes "reckless disregard" by proffering
evidence that an officer "acted with a high degree of awareness of
[a statement's] probable falsity," meaning that, in light of all
the evidence, the officer "entertained serious doubts as to the
truth of his statements or had obvious reasons to doubt the
accuracy of the information he reported." <u>Miller</u>, 475 F.3d at 627
(internal quotation marks omitted).  Allegations of negligence or
innocent mistake do  not satisfy the standard for "reckless
disregard."   <u>Id.</u> at 627-28.   "If–and only if–there is a
misrepresentation, the analysis then focuses on the materiality of
that misrepresentation." <u>Unus</u>, 656 F.3d at 124.

Vinson's alleged misrepresentations and omissions in his
criminal complaint include the following:  (1) that he was able to
obtain a license plate number matching that of Horton from a
witness to the incident; (2) that Jackson, the alleged witness, did
not actually witness the crash on December 20, 2012; (3) that
Vinson acquired Horton's information when he ran the wrong
registration number through the police database; (4) that Vinson

could not determine who was driving the green Jeep on December 20, 2012; (5) that Vinson was able to locate Horton when Swisher pulled him over in January of 2013; and, (6) that Swisher provided Vinson with pictures of Horton's vehicle showing no damage (Dkt. No. 13 at 14-15, 26-27).

Horton first alleges that Vinson made a materially false statement in the criminal complaint that "[d]uring the investigation this Officer was able to obtain a vehicle plate from a witness of the crash." Id. at 26. Horton has provided Jackson's witness statement, which relates that Jackson "followed [the green Jeep] and got it [sic] license # and then went back to the accident scene. The Police and Fire Dept. showed up a few minutes later." (Dkt. No. 13-1 at 2). Horton also included Vinson's report, which states that Jackson told him "that he saw a Red Jeep bearing WV Registration OXB 497 stopped in [sic] road next to the vehicle. Mr. Jackson then followed the vehicle to obtain a plate number then returned to the scene to check on the vehicle." Id. at 4. Vinson's statement in the criminal complaint that a witness obtained Horton's plate number, according to the facts in the complaint, is not a misstatement at all, much less one made with "reckless disregard." Unus, 565 F.3d at 124.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Horton next alleges that Vinson omitted the fact that Jackson did not actually "witness" the December 20, 2012, hit and run incident (Dkt. No. 13 at 26).  Jackson, in his own words, "came off of Duncan and the street was blocked.  The [sic] was a little red car sitting in the middle of the street and a green Jeep [W]rangler sitting on the sidewalk on the right hand side of the street." (Dkt. No. 13-1 at 2).  Although Jackson did not witness the exact moment when the green Jeep struck the red car, it was obvious to him that an accident had just occurred, given the placement of the vehicles and the damage to the red car.  Vinson's characterization of Jackson as a "witness" was not the type of material omission designed to mislead or made in reckless disregard of whether it would mislead the magistrate into issuing a warrant.  <u>Colkley</u>, 899 F.2d at 301.  In short, Horton has pointed to no factual basis in his amended complaint to support the conclusion that Vinson intentionally or with reckless disregard omitted a material fact.

Third, Horton claims that Vinson "withheld from Magistrate DeMarco that he acquired Plaintiff's vehicle information when he intentionally ran Plaintiff's name through the Clarksburg Police Department database . . . based on Plaintiff's prior arrest on November 20, 2014." (Dkt. No. 13 at 26).  Simply put, the amended complaint contains no factual basis for this conclusion, thereby

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

abrogating any obligation on the part of the Court to assume its truth for purposes of the motion to dismiss. See <u>Twombly</u>, 550 U.S. at 555.

Fourth, Horton claims that Vinson withheld "the fact that he could not determine who was driving the suspect vehicle . . . ." (Dkt. No. 13 at 26). Vinson's police report noted that, although Jackson could not see who was driving the Jeep, the license plate number "came back to two individuals out of Elkins, WV." (Dkt. No. 13-1 at 4). In the criminal complaint, Vinson stated that Horton was the suspect of the investigation because his vehicle matched the description of the vehicle described by a witness, and had the same registration number (Dkt. No. 13-1 at 9). The Court refuses to require a law enforcement official to outline every single piece of evidence he lacks in a criminal complaint. <u>Colkley</u>, 899 F.2d at 302.

The Fourth Circuit has expressly declined to require an affiant to include "all potentially exculpatory evidence in the affidavit." <u>Id.</u>; see <u>id.</u> at 301 (quoting <u>United States v. Burnes</u>, 816 F.2d 1354, 1358 (9th Cir. 1987) ("'The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit.'")). For an omission to be actionable under the Fourth Amendment, it must be "designed to

mislead" or in "reckless disregard of whether [it] would mislead" the magistrate. <u>Id.</u> at 301. The facts in the complaint point to no other logical conclusion than, given Vinson's interview of Jackson and the information in the police database, he assumed that Horton, who owned the Jeep, was driving it on December 20, 2012. That Horton is convinced Vinson reached an erroneous conclusion is irrelevant; "mere negligence" is insufficient to invalidate an otherwise proper probable cause determination. <u>See</u> <u>id.</u>

Fifth, Horton contends that Vinson misrepresented that "he was able to locate Plaintiff due to Randolph [C]ounty Deputy Sheriff Swisher had pulled [sic] the vehicle over in January 2013 and obtained pictures for him of the vehicle." (Dkt. No. 13 at 27). The Court is unable to see how this statement is false. In the criminal complaint, Vinson states that he was able to locate Horton after Swisher pulled him over in January of 2013 (Dkt. No. 13-1 at 9). Swisher reported that he saw Vinson's BOLO alert, pulled Horton over, and questioned him regarding his involvement in the December 20, 2012, hit and run incident. <u>Id.</u> at 6. When Vinson contacted Swisher in April of 2013, Swisher recounted that he had stopped Horton's vehicle in January, at which time he had obtained pictures of the Jeep and arrested Horton for driving on a revoked

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

license.  <u>Id.</u> at 8.  Vinson's statement in the criminal complaint therefore was not a misrepresentation.

Finally, Horton alleges that Vinson withheld information regarding a telephone call between the two of them in which Horton advised Vinson that the pictures from Swisher showed that the green Jeep had not sustained any damages that would lead one to believe it had been involved in an accident (Dkt. No. 13 at 27).  He also contends that Vinson omitted from the criminal complaint any mention of how he had obtained Horton's insurance information.  <u>Id.</u>

Horton has failed to allege a single fact pointing to Vinson's intent to mislead Magistrate DeMarco, and the type of information allegedly omitted here is not the type from which a court can infer intent or recklessness.  <u>See</u> <u>Colkley</u>, 899 F.2d at 301 (recognizing that courts may infer intent or recklessness from the fact of omission when the omitted material is "clearly critical" to the finding of probable cause).

For all of the reasons discussed, the Court **FINDS** that Horton has failed to plead a Fourth Amendment violation based on misrepresentation or omission of material information, **GRANTS** Vinson's motion to dismiss, and **DISMISSES WITH PREJUDICE** Count Three.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

### b.    Lack of Probable Cause Determination[11]

Horton contends that Magistrate DeMarco did not properly determine probable cause before issuing warrants for (1) No insurance, in violation of W. Va. Code § 17D-2A-3(d), and (2) Obstructing, in violation of W. Va. Code § 61-5-17(c) (Dkt. No. 13 at 28; Dkt. No. 46 at 16).  Vinson's criminal complaint charged Horton with violating W. Va. Code §§ 17D-2A-3 and 61-5-17.  As to the no insurance charge, the statutory language in the criminal complaint quotes § 17D-2A-3(a), which provides, in relevant part, as follows:

> Every owner or registrant of a motor vehicle required to be registered and licensed in this state shall maintain security as hereinafter provided in effect continuously throughout the registration or licensing period except in case of a periodic use or seasonal vehicle, in which case the owner or registrant is required to maintain security upon the vehicle only for the portion of the year the vehicle is in actual use.

W. Va. Code § 17D-2A-3(a).  Magistrate DeMarco issued a warrant, however, quoting the statutory language of W. Va. Code § 17D-2A-3(d) ("No person may knowingly drive or operate upon any road or highway any motor vehicle upon which security is required

---

[11] This aspect of Horton's retaliatory prosecution claim corresponds with his fourth cause of action for warrants without a probable cause determination, and the Court will therefore address both counts (Dkt. No. 13 at 28).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

by the provisions of this article unless the required security is in effect").

Similarly, the criminal complaint charged Horton with no obstruction, in violation of W. Va. Code § 61-5-17(a), which provides the following:

> A person who by threats, menaces, acts or otherwise forcibly or illegally hinders or obstructs or attempts to hinder or obstruct a law-enforcement officer probation officer or parole officer acting in his or her official capacity is guilty of a misdemeanor . . . .

W. Va. Code § 61-5-17(a). The warrant issued by Magistrate DeMarco, however, quotes the statutory language of W. Va. Code § 61-5-17(c) ("A person who, with intent to impede or obstruct a law-enforcement official in the conduct of an investigation of a felony offense, knowingly and willfully makes a materially false statement is guilty of a misdemeanor . . . ").

Horton contends that Magistrate DeMarco issued warrants for offenses different than those for which he determined probable cause existed in the criminal complaint (Dkt. No. 46 at 16-17).[12] "The charging statute is clearly relevant in determining whether there is probable cause for an arrest." Reynolds v. Hale, 855 F.Supp. 147, 150 (S.D.W. Va. 1994). Horton seemingly has made a

---

[12] In West Virginia, a warrant issued on a criminal complaint must contain "the name of the defendant" and "describe the offense charged in the complaint." W. Va. Code § 62-1-3.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

prima facie case that the arrest warrants were facially defective. It is unclear, however, how Vinson is culpable under the Constitution for Magistrate DeMarco's actions in issuing the warrants with erroneous code sections.

In West Virginia, the separate roles of law enforcement officers and magistrates are clearly outlined in W. Va. Code §§ 62-1-1, *et seq.* Law enforcement officers are responsible for submitting the criminal complaint–a "written statement of the essential facts constituting the offense charged"–under oath, to the magistrate. W. Va. Code § 62-1-1. If the magistrate believes that the complaint establishes probable cause to believe an offense has been committed, he "shall issue" an arrest warrant "to any officer authorized by law to arrest persons charged with offenses against the State." W. Va. Code § 62-1-2; Smith v. Garrett, 586 F.Supp. 517, 524 (N.D.W. Va. 1984) (describing how law enforcement officials presented information, under oath, to an impartial magistrate, who then issued warrants).

It is undisputed that Magistrate DeMarco is not named as a defendant in this case, likely because he enjoys absolute immunity from suit as a judicial officer. Mireles v. Waco, 502 U.S. 9, 11, 112 S.Ct. 286, 288 (1991) (per curiam). After carefully examining the factual allegations in the amended complaint, the Court

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

concludes that Horton has failed to state a claim against Vinson
upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

Horton has alleged the following facts regarding Vinson's
involvement in the issuance of the erroneous arrest warrants:  (1)
Vinson prepared a criminal complaint alleging "false" criminal
charges and presented it to Magistrate DeMarco; (2) Magistrate
DeMarco signed and issued arrest warrants citing the wrong parts of
the applicable statutes; and, (3) Magistrate DeMarco seemingly
failed to make a probable cause determination as to the code
sections cited on the arrest warrants (Dkt. No. 13 at 13-15).  From
these sparse facts, Horton "concludes" that Vinson "caused and was
the proximate cause of warrants being issued . . . without a
judicial determination of probable cause."  Id. at 28.  The Court
is unable, however, to make that logical leap.  See Hartman, 547
U.S. at 262 n. 9, 126 S.Ct. at 1705 n.9 (discussing how the correct
defendant in a retaliatory prosecution claim under § 1983 is often
an immune judicial official).

Taking the facts pleaded by Horton as true, it is clear that
Vinson prepared the criminal complaint, which he presented to
Magistrate DeMarco, who signed and issued the arrest warrants.
Vinson then faxed the arrest warrants to Swisher for execution.  It
was Magistrate DeMarco, and not Vinson, who prepared and signed the

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

warrants. See Twombly, 550 U.S. at 555 (holding that a plaintiff must provide more than labels and conclusions to obtain relief). The Court therefore **FINDS** that Horton has failed to adequately plead a Fourth Amendment violation as to Vinson under Count Four of the amended complaint, **GRANTS** Vinson's motion to dismiss, and **DISMISSES WITH PREJUDICE** Count Four.[13]

### c.   Probable Cause

Having previously found that Vinson did not misrepresent or omit facts in the criminal complaint, it is now appropriate for the Court to turn to whether Horton sufficiently pleaded a lack of probable cause. Hartman, 547 U.S. at 254, 126 S.Ct. at 1706 ("Some sort of allegation, then, is needed both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity . . . [t]he connection, to be alleged and shown, is the absence of probable cause"). Horton's failure to plead facts establishing a lack of probable cause would be fatal to his retaliatory prosecution claim. Id. at 258, 265, 126 S.Ct. at 1702, 1706.

---

[13] The Court dismisses Count Four with prejudice due to its later finding that Magistrate DeMarco properly determined that probable cause existed.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 111, 95 S.Ct. 854, 862 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964)). It requires an affiant to show "a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Grubbs, 547 U.S. 90, 95, 126 S.Ct. 1499, 1499 (2006) (internal quotations omitted). The existence of probable cause turns on (1) the suspect's conduct, as known to the officer; and (2) the contours of the offense thought to be committed. Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). "When no reasonable officer could believe, in light of the circumstances of the offense, that probable cause exists, there is a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause." George v. Kanawha Cty. Sheriff's Dept., No. 2:08-0141, 2011 WL 108930, at *2 (S.D.W. Va. Jan. 11, 2011).

### i.   Immediate Notification of Crashes

Magistrate DeMarco found sufficient probable cause to issue a warrant for immediate notification of crashes, in violation of W. Va. Code § 17C-4-6, which provides the following:

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

> The driver of a vehicle involved in a crash resulting in injury to or death of any person or total property damage to an apparent extent of $ 1,000 or more shall immediately by the quickest means of communication, give notice of such crash to the local police department if such crash occurs within a municipality, otherwise to the office of the county sheriff or the nearest office of the West Virginia State Police.

W. Va. Code § 17C-4-6. Vinson was required to include in his criminal complaint facts "sufficient to warrant a prudent man in believing" that the following elements had been met: (1) that Horton was the driver of a vehicle; (2) that the vehicle was involved in a crash resulting in either injury, death, or property damage appearing to be in excess of $ 1,000; (3) that Horton failed to communicate the crash to the appropriate authority by the quickest means of communication. <u>Gerstein</u>, 420 U.S. at 111, 93 S.Ct. at 862 (internal quotations omitted).

Vinson's criminal complaint included the following facts: (1) a leaving the scene incident occurred in Clarksburg on December 20, 2012; (2) a witness provided Vinson with a license plate number matching that of Horton; (3) Vinson obtained pictures of Horton's vehicle; (4) Vinson contacted Horton, advising him that his vehicle had been involved in an accident, and that Vinson needed his insurance information; and, (5) although Horton told Vinson that he would obtain the insurance information, he failed to contact Vinson to provide the insurance information (Dkt. No. 13-1 at 9).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Vinson's criminal complaint included sufficient facts to warrant a prudent man's belief that Horton was the driver of the vehicle in question, and that Horton's vehicle was indisputably involved in the incident.  Moreover, the fact that Horton promised Vinson that he would obtain the insurance information but later failed to do so leads to the conclusion that Horton knew of his vehicle's involvement and was avoiding Vinson.  See State v. Blankenship, No. 11-0387, 2012 WL 2914894, at *4 (W. Va. Feb. 14, 2012) (upholding the trial court's conclusion that the defendant was guilty of failing to report an accident, despite the lack of direct evidence that he was the driver, when the vehicle was registered under his name and the paint marks on the victim's car matched that of the defendant's car).

Although Vinson does not specifically state facts supporting the third element of immediate notification of crashes, that is, that Horton failed to immediately notify the police, such fact is obvious from the phrasing of the complaint.  Vinson's characterization of the incident as a "leaving the scene" and his detailed account of the steps taken to track down Horton inevitably lead to the conclusion that Horton, whom he believed to be the driver of the vehicle in question, left the scene without reporting the accident to law enforcement.  Mindful of its obligation to

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

afford "great deference" to Magistrate DeMarco's probable cause determination, the Court **FINDS** that Horton has failed to plead any facts in his amended complaint to overcome that deference.

### ii.  No Insurance

Magistrate DeMarco found that probable cause existed to issue a warrant for no insurance.  As previously explained, Magistrate DeMarco made his probable cause determination using the statutory language of W. Va. Code § 17D-2A-3(a), but issued a warrant citing § 17D-2A-3(d).  Vinson, however, included sufficient facts in his criminal complaint to support a probable cause determination under either section.

Pursuant to § 17D-2A-3(a), Vinson was required to include facts in support of the following elements:  (1) Horton was the owner or registrant of a motor vehicle required to be registered or licensed in West Virginia; (2) Horton had failed to maintain insurance on his vehicle continuously throughout the registration or licensing period; and, (3) the vehicle was not a periodic or seasonal vehicle.  An offense under § 17D-2A-3(d), on the other hand, contains the following elements:  (1) Horton knowingly drove or operated a motor vehicle (2) with no insurance.

Vinson included the following facts in his criminal complaint: (1) a vehicle registered to Horton was linked to a leaving the

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

scene in Clarksburg; (2) Vinson contacted Horton and advised him that his vehicle was involved in an accident, and that Vinson needed his insurance information; (3) Horton told Vinson that he would obtain the insurance information, but failed to contact Vinson or return Vinson's calls; (4) Horton's insurer, Titan Insurance, had issued a policy covering the vehicle from September of 2012 until September of 2013; and, (5) Titan cancelled the policy on September 20, 2012 (Dkt. No. 13-1 at 9).

Vinson's criminal complaint included sufficient facts to warrant a prudent man's belief that Horton had violated either §§ 17D-2A-3(a) or (d).  The vehicle, which was registered to Horton, was not covered by a valid insurance policy from September 20, 2012, on.  W. Va. Code § 17D-2A-3(a).  Similarly, Magistrate DeMarco reasonably could have concluded, based on Horton's evasiveness and the facts in the criminal complaint, that Horton had been driving his vehicle without insurance, and had refused to cooperate with Vinson's investigation because he knew his insurance had lapsed.  W. Va. Code § 17D-2A-3(d).  Mindful of its obligation to afford "great deference" to Magistrate DeMarco's probable cause determination, the Court **FINDS** that Horton has failed to plead any facts in his amended complaint to overcome that deference.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

### iii. Obstructing

Finally, Magistrate DeMarco found probable cause to issue a warrant for obstructing. Much like the no insurance charge, Magistrate DeMarco made his probable cause determination using the statutory language of W. Va. Code § 61-5-17(a), but issued a warrant citing § 61-5-17(c).

In order to establish that Horton had violated W. Va. Code § 61-5-17(a), Vinson was required to prove the following elements: (1) Horton forcibly or illegally[14] (2) hindered, obstructed, or attempted to hinder or obstruct (3) by threats, menaces, acts or otherwise (4) a law-enforcement officer, probation officer, or parole officer acting in his or her official capacity. In West Virginia, a citizen's refusal to provide identification to a police officer "after a law enforcement officer has communicated the reason why the citizen's name is being sought in relation to the officer's official duties" substantiates a violation of W. Va. Code § 61-5-17(a). State v. Srnsky, 582 S.E.2d 859, 868 (W. Va. 2003).

---

[14] Actual violence or force is not needed to prove a violation of W. Va. Code § 61-5-17(a). State v. Johnson, 59 S.E.2d 485, 487 (W. Va. 1950). "The words 'forcibly' or 'illegally' used in the statute clearly mean any unlawful interference with the officer in the discharge of his official duties. . . ." Id. Lawful conduct is insufficient to establish the offense of obstructing. State v. Carney, 663 S.E.2d 606, 611 (W. Va. 2008).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

A violation of § 61-5-17(c), however, includes the following elements: (1) Horton intended to impede or obstruct (2) a law-enforcement official in the conduct of an investigation of a felony offense (3) and knowingly and willfully (4) made a materially false statement.

Vinson alleged the following facts in the criminal complaint: (1) that Vinson had contacted Horton and advised him that his vehicle had been involved in an accident, and that Vinson needed his insurance information; (2) that Horton reluctantly told Vinson that he would obtain the insurance information; (3) that Horton's telephone became disconnected and he failed to contact Vinson; (4) that Vinson discovered Horton did not have valid insurance on his vehicle; and, (5) that Horton refused to return Vinson's calls for at least three weeks (Dkt. No. 13-1 at 9).

Vinson alleged sufficient facts in his criminal complaint to support charges under either W. Va. Code §§ 61-5-17(a) or (c). As an initial matter, Vinson clearly was acting in his official, law enforcement capacity when he investigated the incident and spoke with Horton. Although Horton did not use physical "force" to obstruct the investigation, he did refuse to provide Vinson with his insurance information after Vinson explained that he was the target of a hit and run investigation. Srnsky, 582 S.E.2d at 868.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

That Horton promised Vinson he would provide him with the insurance information, subsequently failed to do so and avoided Vinson's telephone calls is sufficient to establish that Horton (1) acted (2) with the intent to hinder or obstruct the investigation.

For the same reasons, the criminal complaint contained sufficient facts to allow Magistrate DeMarco to conclude that Horton (1) intended to impede or obstruct (2) a law-enforcement official in the conduct of an investigation of a felony offense, (3) and knowingly and willfully (4) made a materially false statement. Horton knew that Vinson was investigating a hit and run or "leaving the scene" in violation of W. Va. Code § 17C-4-3, told Vinson that he would obtain his insurance information, and failed to do so. Mindful of its obligation to afford "great deference" to Magistrate DeMarco's probable cause determination, the Court **FINDS** that Horton has failed to plead any facts in his amended complaint to overcome that deference.

Because the Court has upheld Magistrate DeMarco's probable cause determination as to all three counts in the criminal complaint, it **FINDS** that Horton has failed to adequately plead the lack of probable cause, a necessary element of his retaliatory prosecution claim. It therefore **GRANTS** Vinson's motion to dismiss Count Two of the amended complaint and **DISMISSES WITH PREJUDICE**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

that count insofar as it purportedly states a cause of action under § 1983.

### 3.    Search of Horton's Vehicle

Throughout his amended complaint, Horton alleges that Vinson caused his Jeep to be searched and his insurance information seized in violation of the Fourth Amendment (Dkt. No. 13 at 12-13, 26).[15] Magistrate Judge Kaull recommended dismissing this claim because Scott, who possessed a bailment interest in Horton's vehicle, and therefore could consent to a search, agreed to procure the insurance information for Vinson (Dkt. No. 64 at 19-20).

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, protects a person's right to be secure in his "persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684 (1961). A "search" occurs when a person's "expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656 (1984). "A 'seizure' of property occurs

---

[15] Magistrate Judge Kaull analyzed this claim under Count Three, which accuses Vinson of misstating or omitting material facts in his criminal complaint in order to obtain warrants (Dkt. No. 64 at 18-20). It is unclear under which count Horton intends to plead this alleged violation, leading the Court to treat it as a stand-alone Fourth Amendment claim.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

when there is some meaningful interference with an individual's possessory interests in that property." Id. Except in certain categories of cases, governmental "search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." Camara v. Mun. Court of City and Cty. of San Francisco, 387 U.S. 523, 528, 87 S.Ct. 1727, 1731 (1967).

### a.    Governmental Action

The Fourth Amendment prohibition against unreasonable searches and seizures applies to governmental actors; it is inapplicable to private individuals "not acting as an agent of the Government or with the participation or knowledge of any governmental official." Jacobsen, 466 U.S. at 113, 104 S.Ct. at 1656 (quoting Walter v. United States, 447 U.S. 649, 662, 100 S.Ct. 2395, 2403 (1980) (Blackmun, J., dissenting)); United States v. Jarrett, 338 F.3d 339, 344 (4th Cir. 2003) (stating that the Fourth Amendment "does not provide protection against searches by private individuals acting in a private capacity").

The question whether one is a private actor for Fourth Amendment purposes "necessarily turns on the degree of the Government's participation in the private party's activities," a question to be resolved in "light of all the circumstances."

46

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 614, 109 S.Ct. 1402, 1412 (1989); see also United States v. Richardson, 607 F.3d 357, 364 (4th Cir. 2010) (naming as "key factors" (1) whether the government knew of and acquiesced in the private search, and (2) whether the private individual intended to assist law enforcement or had some other independent motivation).

Whether a private citizen is deemed an "agent" or "instrument" of the government for Fourth Amendment purposes is guided by common law agency principles. United States v. David, 943 F.Supp. 1403, 1410 (E.D. Va. 1996) (internal citations omitted) ("Of critical importance, for an agency relationship between a private citizen and the government to exist, both parties must have manifested their consent to that relationship, either expressly or by necessary implication from their conduct"). "[M]ere knowledge and acquiescence by the government does not convert a private search into a governmental one for purposes of the Fourth Amendment." Id. As a corollary to that rule, if a private actor frustrates an individual's expectation of privacy, "the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." Jacobsen, 466 U.S. at 117, 104 S.Ct. at 1658. A governmental official's "viewing of what a private party had freely made

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

available for his inspection did not violate the Fourth Amendment." Id. at 119, 104 S.Ct. at 1660.

Following a thorough review of the amended complaint, the Court is satisfied that Horton has adequately pleaded that Scott was a governmental actor when he searched Horton's car. Taking all well-pleaded facts in the amended complaint as true, Horton has established that (1) Vinson contacted Scott and asked him to obtain Horton's registration and insurance information; (2) Scott agreed to provide Vinson with the requested information; (3) Scott took the keys to Horton's Jeep and unlocked and entered the vehicle; (4) Scott unlocked the glove box and rummaged through it until he found Horton's registration and proof of insurance; and, (5) Scott took the registration and insurance cards and verbally transmitted the information to Vinson over the telephone (Dkt. No. 13 at 12).[16]

The facts alleged by Horton establish that Scott's conduct was not undertaken to further his own private purposes, but rather to assist Vinson's law enforcement investigation. Richardson, 607 F.3d at 364. Moreover, far from merely "knowing" of or "acquiescing" in Scott's conduct, Vinson initiated it; he called

---

[16] To be clear, the Court is not holding that Scott was an agent of the state, which would be inappropriate at this stage of the litigation. Hooper, 618 F.Supp. at 968. It is merely finding that Horton has alleged sufficient facts to survive the motion to dismiss based on private activity.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Scott and affirmatively asked him to assist the investigation. David, 943 F.Supp. at 1410; see Hooper v. Sachs, 618 F.Supp. 963 (D. Md. 1985) (denying summary judgment and allowing limited discovery on issue of whether a private individual gave the state defendants Medicaid records at their request). Horton has adequately pleaded that Scott acted as a governmental actor, and not as a private actor. It is clear that Horton may sue Vinson under § 1983 for such an act if it violates the Fourth Amendment. See id. at 966 (permitting the case to move forward against governmental defendants pending discovery as to whether the private defendant was directed to obtain the evidence from the plaintiff).

Nonetheless, not every governmental action is a "search" prohibited by the Fourth Amendment. For such a claim to be actionable, the governmental action must infringe an expectation of privacy that society is prepared to accept as reasonable. McLaughlin v. A.B. Chance Co., 842 F.2d 724, 726 (4th Cir. 1988) (quoting Maryland v. Macon, 472 U.S. 463, 469, 105 S.Ct. 2778, 2782 (1985) (internal quotation marks omitted)).

### b.    Consent to Search

The Fourth Amendment does not prohibit all searches and seizures, but, rather, only those that are unreasonable. Florida v. Jimeno, 500 U.S. 248, 250, 111 S.Ct. 1801, 1803 (1991)(internal

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

citations omitted). The Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." Id. (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043 (1973)). A third party may consent to a search so long as he has authority to consent and does so voluntarily. Trulock v. Freeh, 275 F.3d 391, 402-03 (4th Cir. 2001).

The scope of a consensual search is measured by a standard of "objective reasonableness," defined as what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." Jimeno, 500 U.S. at 250, 111 S.Ct. at 1803-04 (citing Illinois v. Rodriquez, 497 U.S. 177, 183-89, 110 S.Ct. 2793, 2798-2802 (1990)). Here, the scope of the search initiated by Vinson is not at issue; if Scott validly consented to search the vehicle for Horton's insurance and registration, then the scope of his search was proper. See Jimeno, 500 U.S. at 251-52, 111 S.Ct. at 1804 (holding that it was objectively reasonable for an officer to conclude that general consent to search an automobile included consent to search containers within that car that could contain drugs). Rather, the issue before the Court is whether Scott had the necessary property or possessory interest in Horton's vehicle to consent to the search in the first place.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

It is well-established that a co-occupant "who shares, or is reasonably believed to share, authority over" a common area may consent to its search. <u>Georgia v. Randolph</u>, 547 U.S. 103, 106, 126 S.Ct. 1515, 1518 (2006). "Common authority" does not necessarily denote a property interest, but "requires evidence of 'mutual use' by one generally having 'joint access or control for most purposes.'" <u>United States v. Buckner</u>, 473 F.3d 551, 554 (4th Cir. 2007) (quoting <u>United States v. Matlock</u>, 415 U.S. 164, 171, 94 S.Ct. 988, 993 (1974)). Furthermore, a third-party who has some "other sufficient relationship" to the effects sought to be searched may consent to its search. <u>Id.</u>

The Supreme Court has held that a bailee with sufficient control over the bailed object can effectively consent to a search. <u>Frazier v. Cupp</u>, 394 U.S. 731, 740, 89 S.Ct. 1420, 1425 (1969). In <u>Frazier</u>, the defendant left his cousin, Rawls, with an unlocked duffel bag, with the understanding that Rawls could use at least part of the bag. <u>Id.</u> The police asked Rawls if they could have his clothing, and he consented, pointing the police to the duffel bag, where they found incriminating evidence. <u>Id.</u> The Court rejected the defendant's argument that Rawls only had authority to consent to a search of the one compartment he was using within the bag, noting that it would not "engage in such metaphysical

subtleties in judging the efficacy of Rawls' consent." Id. Rather, it found that the defendant, in allowing Rawls to use his bag and leaving it with him, "must be taken to have assumed the risk that Rawls would allow someone else to look inside." Id.

When assessing whether a bailor has assumed the risk that the bailee would consent to a search of the bailed effects, courts generally analyze "the extent to which the bailor made efforts to secure, even as against the bailee, the privacy of his effects." Wayne R. LaFave, 4 Search & Seizure § 8.6(a), Consent by bailee (5th ed.). Compare United States v. Presler, 610 F.2d 1206, 1213-14 (4th Cir. 1979) (finding that the bailee could not effectively consent to a search of the locked briefcases given to him only for safekeeping and to which he was not given any right of access), with Sartain v. United States, 303 F.2d 859, 862-63 (9th Cir. 1962) (holding that the bailee could effectively consent to a search of the locked briefcase when the bailor provided him with a key). Other relevant factors include the nature and extent of the bailment. LaFave, supra.

Importantly, a bailee who was given a key to the trunk of the bailed automobile can validly consent to a search of the bailed automobile's locked trunk. United States v. Eldridge, 302 F.2d 463, 466 (4th Cir. 1962)("Using the key to open the trunk was not

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

an unwarranted exercise of dominion during the period of [the bailee's] permissive possession and use.  Access to the trunk is a normal incident to the use of an automobile"); see United States v. Crowder, 588 F.3d 929, 936 (7th Cir. 2009) (finding that a bailee car carrier driver could consent to a search of the bailed vehicle when the bailee was given the keys, and the bailor knew that the bailee would enter and drive the car).

The facts in the instant case support the conclusion that Scott had a sufficient bailment interest in Horton's vehicle to consent to the search.[17]  Scott had had possession of Horton's Jeep for more than two weeks at the time of the search (Dkt. No. 13 at 9).  Moreover, Horton had given Scott the key not only to the Jeep, but also to the locked glove compartment within the Jeep.  Id. at 12; Eldridge, 302 F.2d at 465-66.  Finally, Horton has pleaded no facts suggesting that he explicitly told Scott not to access any part of the Jeep.

It is uncontested that Scott consented to search Horton's Jeep when he was asked to do so by Vinson (Dkt. No. 13 at 12).  After

---

[17] This inquiry is separate from and not to be confused with the inquiry of whether Scott acted as a governmental official at Vinson's direction.  The Court has already answered that question in the affirmative.  Nonetheless, Scott, by virtue of his bailment relationship with Horton, could validly consent to the search proposed by Vinson.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Horton told Vinson that his Jeep was at Scott's Auto Sales being
repaired, Vinson called Scott and asked him to look for Horton's
registration and insurance information.  <u>Id.</u>  Scott agreed,
unlocked both the Jeep and the glove compartment, and found the
insurance information.  <u>Id.</u>  After the fact, Scott confirmed to
Investigator McFarland that he had agreed to provide Vinson with
the requested information.  <u>Id.</u>  The Court therefore **FINDS** that
Scott could and did consent to the search.  The scope of the search
was reasonable, and did not violate Horton's Fourth Amendment
rights.  Based on this, the Court **GRANTS** Vinson's motion to dismiss
and **DISMISSES WITH PREJUDICE** any claim involving a violation of the
Fourth Amendment.

### 4. Criminalization of Lawful Conduct

In Count Five of his amended complaint, Horton alleges that
Vinson "willfully, knowingly, deliberately, wantonly, intentionally
and with malice" violated his First and Fourth Amendment rights by
criminalizing lawful conduct "as a means to arrest, prosecute and
imprison" him (Dkt. No. 13 at 29).  Horton contends that, by
procuring an arrest warrant "without probable cause" for
obstructing, Vinson has criminalized Horton's legal conduct, <u>i.e.</u>,
his refusal to speak with Vinson (Dkt. No. 46 at 20-22).  The Court
has already found that probable cause existed for the obstructing

charge.   As such, Horton has not asserted a cognizable claim. Vinson did not "criminalize legal conduct"; rather, he sought an arrest warrant, based on probable cause, after Horton had evaded him and refused to answer his questions.   The Court therefore **GRANTS** Vinson's motion to dismiss and **DISMISSES** Count Five **WITH PREJUDICE.**

### 5.   Civil Conspiracy

In Count Seven of his amended complaint, Horton alleges that Vinson, along with Scott, Renzelli, and Houchin, engaged in a conspiracy to violate his civil rights (Dkt. No. 13 at 31).   He contends that the purpose of the civil conspiracy was to "knowingly and intentionally extort" $5,000 from him to fix Woolmaker's vehicle.   <u>Id.</u>   He also states that the alleged conspirators sought to violate his First, Fourth, and Sixth Amendment rights.   <u>Id.</u>   At this juncture, it is helpful to separate out any civil conspiracy claim based on the state law tort of extortion from a conspiracy claim under § 1983.

In West Virginia, it is well-established that civil conspiracy "is not a *per se*, stand-alone cause of action," but is rather "a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)."

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Dunn v. Rockwell, 689 S.E.2d 255, 269 (W. Va. 2009).  As such, "the statute of limitation for a civil conspiracy claim is determined by the nature of the underlying conduct on which the claim of conspiracy is based . . . ."  Id.

In this district, it is unclear whether West Virginia recognizes a cause of action in tort for extortion.  See Mitchell v. First Central Bank, Inc., No. 2:08CV6, 2008 WL 4145517, at *3, n. 1 (N.D.W. Va. Sept. 8, 2008) (discussing the possibility that West Virginia does not recognize a civil cause of action for extortion).  In Cunningham Energy, LLC v. Outman, No. 2:13-CV-20748, 2013 WL 5274361, at *4-5 (S.D.W. Va. Sept. 18, 2013), the United States District Court for the Southern District of West Virginia granted a motion to dismiss on the basis that West Virginia's criminal extortion statute does not create a private right of action.  Id.; see W. Va. Code § 61-2-13.  The court proceeded through the four factor test in Hurley v. Allied Chem. Corp., 262 S.E.2d 757, 758 (W. Va. 1980), before concluding that there was no clear legislative intent to create a private right of action in the criminal extortion statute.  Cunningham, 2013 WL 5274361, at *5.  The court also noted that the Supreme Court of Appeals of West Virginia apparently foreclosed a private right of action in Machinery Hauling, Inc. v. Steel of W. Va., 384 S.E.2d

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

139 (W. Va. 1989). The reasoning in <u>Cunningham</u> is persuasive, and the Court **FINDS** that, to the extent Horton has attempted to plead a civil conspiracy based on extortion, he has failed because West Virginia does not recognize such a private cause of action.

The Court will therefore analyze Horton's claim as a § 1983 conspiracy claim. "To survive a motion to dismiss a § 1983 conspiracy claim, a plaintiff must allege that 'the defendants conspired or acted jointly or in concert and that some overt act was done in furtherance of the conspiracy, which resulted in plaintiff being deprived of the constitutional right.'" <u>Givens v. Main Street Bank</u>, No. 5:08CV25, 2009 WL 1120599, at *7 (N.D.W. Va. Apr. 24, 2009) (citing <u>Hafner v. Brown</u>, 983 F.2d 570, 577 (4th Cir. 1992)).

Horton has failed to plead any facts establishing that the defendants agreed or conspired to violate his civil rights, or that the defendants undertook any overt act in furtherance of the conspiracy. Furthermore, even if he had, the Court has already held that Vinson did not violate Horton's First or Fourth Amendment rights. Although Horton mentions the Sixth Amendment, he has failed to allege how any of his Sixth Amendment rights were violated. The Court therefore **GRANTS** Vinson's motion to dismiss Count Seven and **DISMISSES** it **WITH PREJUDICE**.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

### B.   Malicious and Retaliatory Prosecution

In Count One of his amended complaint, Horton alleges that Vinson maliciously instigated false criminal charges against him "without probable cause." (Dkt. No. 13 at 25). In Count Two, Horton contends that Vinson prepared the criminal complaint in retaliation for (1) Horton's refusal to speak with Vinson, and (2) the cancelled insurance policy. <u>Id.</u> Magistrate Judge Kaull recommended dismissing both claims because probable cause existed to support Vinson's prosecution (Dkt. No. 64 at 23).

To adequately plead a cause of action for malicious prosecution, the plaintiff must allege (1) malicious prosecution, (2) want of probable cause, and (3) that the prosecution terminated in his favor. Syl. pt. 1, <u>Preiser v. MacQueen</u>, 352 S.E.2d 22, 24-25 (W. Va. 1985). Similarly, to state a cognizable cause of action for retaliatory prosecution, the plaintiff must allege (1) prosecution with the intent to punish the plaintiff for exercising his constitutional rights, (2) lack of probable cause, and (3) that the prosecution terminated in his favor. <u>Jarvis v. W. Va. State Police</u>, 711 S.E.2d 542, 549 (W. Va. 2010).

The lack of probable cause is an element in both malicious prosecution and retaliatory prosecution claims. Inasmuch as the Court has already ruled that probable cause existed to support

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Vinson's criminal complaint against Horton, it follows that Vinson has failed to state a claim upon which relief may be granted as to Counts One and Two of the amended complaint. The Court therefore **GRANTS** Vinson's motion to dismiss and **DISMISSES** Counts One and Two **WITH PREJUDICE**.

### C. Negligence

In Count Six of his amended complaint, Horton alleges that Vinson negligently caused a BOLO alert to be issued "for malicious purposes, in bad faith or in a wanton or reckless manner" for Horton's Jeep (Dkt. No. 13 at 30). As a result, Horton was "arrested, arraigned, forced to post bond, [and] convicted and imprisoned on unrelated charges," causing him injury, "great pain of mind," and expenses of $ 1,000. Id. Vinson contends that, as an employee of a political subdivision, he is immune as to Horton's negligence claim (Dkt. No. 18 at 20).

Pursuant to W. Va. Code § 29-12A-5(b), an employee of a political subdivision is immune from liability unless (1) "his acts or omissions were manifestly outside the scope of employment or official responsibilities"; (2) "his acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner"; or, (3) "liability is expressly imposed upon the employee

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

by a provision of this code." W. Va. Code § 29-12A-5(b)(1)-(3).

A political subdivision is defined as follows:

> [A]ny county commission, municipality and county board of
> education; any separate corporation or instrumentality
> established by one or more counties or municipalities, as
> permitted by law; any instrumentality supported in most
> part by municipalities; any public body charged by law
> with the performance of a government function and whose
> jurisdiction is coextensive with one or more counties,
> cities or towns; a combined city-county health department
> created pursuant to article two, chapter sixteen of this
> code; public service districts; and other
> instrumentalities including, but not limited to,
> volunteer fire departments and emergency service
> organizations as recognized by an appropriate public body
> and authorized by law to perform a government function:
> Provided, That hospitals of a political subdivision and
> their employees are expressly excluded from the
> provisions of this article.

W. Va. Code § 29-12A-3(c). The City of Clarksburg Police

Department qualifies as a political subdivision under the statute

as a public body "charged by law with the performance of a

government function." See State ex rel. City of Bridgeport v.

Marks, 759 S.E.2d 192, 198 (W. Va. 2014).

Horton contends that Vinson is not immune because he (1) acted

outside the scope of his employment "to falsify evidence at will in

order to cause [him] to be arrested . . . ," and (2) acted

maliciously in issuing the BOLO "without any evidence whatsoever to

believe [he] was involved in the accident." (Dkt. No. 46 at 23).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

### 1.   Scope of Employment

The argument that Vinson is not immune pursuant to W. Va. Code § 29-12A-5(b)(1) because he was not acting within the scope of his employment is specious.  An employee acts within the scope of his employment if his conduct is (1) "of the kind he is employed to perform"; (2) occurs "within the authorized time and space limits"; (3) "is actuated, at least in part, by a purpose to serve the master"; and, (4) "if force is used, the use of force is not unexpectable by the master." W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B., 766 S.E.2d 751, 769 (W. Va. 2014) (quoting Restatement (Second) of Agency § 228 (Am. Law Inst. 1958)).  In contrast, an employee's conduct is not within the scope of the employment if "it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Id.  Although whether a person acted within the scope of employment usually presents a question of fact for the jury, it is a question of law "when 'the facts are undisputed and no conflicting inferences are possible.'" Id. at 768 (quoting Mary M. v. City of Los Angeles, 814 P.2d 1341, 1347 (Cal. 1991) (en banc)).

The facts in Horton's amended complaint all point inevitably to the conclusion that Vinson was acting squarely within the scope

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

of his employment as a police officer when he investigated the hit and run incident, interviewed witnesses, filed a criminal complaint, and sought warrants.  See Beckley v. Crabtree, 428 S.E.2d 317, 319 (W. Va. 1993) ("The sheriff's actions in effectuating the arrest of a criminal suspect were clearly within the scope of his employment").

The facts assumed to be true for purposes of this motion to dismiss establish the following:  (1) Vinson investigated the hit and run incident on December 20, 2012, by interviewing witnesses, including Jackson; (2) Jackson told Vinson that he obtained the license plate number from the green Jeep, although he could not later remember that number when speaking to Investigator McFarland; (3) three days later, Vinson wrote a police report including the license plate number from Horton's Jeep; (4) Vinson issued a BOLO alert that included Horton's license plate number; and, (5) Horton was later pulled over by Swisher, who was aware of the BOLO alert, resulting in Horton's arrest on driving on a revoked license charges.  Horton's conclusory allegation that Vinson acted outside the scope of his employment by "falsifying evidence at will" is unsupported by the facts pleaded in his amended complaint.  In short, all of the facts as pleaded by Horton lead to the conclusion that Vinson was acting as a police officer, performing the duties

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

that a police officer usually performs, during his regular shift, for the purpose of serving the police department. The Court therefore declines to find that Vinson was acting outside the scope of his employment pursuant to W. Va. Code § 29-12A-5(b)(1).

### 2. Malicious Purpose

Alternatively, Horton argues that Vinson issued the BOLO alert with a malicious purpose, and falsified the alert in bad faith (Dkt. No. 46 at 23). Vinson is immune unless "his acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." W. Va. Code § 29-12A-5(b)(2); see, e.g., Mallamo v. Town of Rivesville, 477 S.E.2d 525, 532 (W. Va. 1996) (finding a disputed question of material fact as to whether police officers acted with malicious purpose or in bad faith when the officers later falsely portrayed the plaintiff as an aggressor to justify shooting him); Holsten v. Massey, 490 S.E.2d 864, 877 (W. Va. 1997) (defining wanton or reckless conduct as intentional conduct "of an unreasonable character" in disregard of a known or obvious risk).

The specific acts that Horton contends establish "malicious purpose" or "bad faith" on the part of Vinson include (1) falsifying evidence, which caused Horton's arrest; (2) issuing the BOLO based on falsified evidence; and (3) intending to cause

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Horton's arrest (Dkt. No. 46 at 23).   As discussed earlier, however, even taking the facts in Horton's amended complaint as true, they establish that Jackson provided Vinson with a license plate number, which Vinson then ran through police databases to come up with Horton's vehicle.   That vehicle matched Jackson's description of the Jeep involved in the hit and run incident, leading Vinson to issue a BOLO alert.   Horton's argument that Vinson falsified his license plate number based on Jackson's failure to remember the number over one month later is unsupported by the facts.[18]   Therefore, based on the absence of any supporting facts that Vinson acted maliciously, in bad faith, or in a wanton or reckless manner, the Court **FINDS** that Vinson is immune from Horton's negligence claim pursuant to W. Va. Code § 29-12A-5(b), **GRANTS** his motion to dismiss, and **DISMISSES** Count Six **WITH PREJUDICE.**

D.    **Statute of Limitations**

Vinson contends that Horton's § 1983 claims are barred by a one-year statute of limitations (Dkt. No. 18 at 23).   The

_____

[18] Furthermore, Horton does not contest that the license plate number included in Vinson's report corresponds to that of his Jeep (Dkt. No. 46).   Rather, he insists that Vinson obtained it by some unspecified means as part of a nefarious scheme, all the while admitting that Jackson said that he wrote down the plate number and gave it to Vinson.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

applicable statute of limitations in § 1983 claims "is that which the State provides for personal-injury torts." <u>Wallace v. Kato</u>, 549 U.S. 384, 388, 127 S.Ct. 1091, 1094 (2007); <u>see</u> <u>Cooper v. Lippa</u>, No. 3:11-CV-712, 2012 WL 1410077, at *3 (E.D.Va. Apr. 23, 2012) ("The applicable statute of limitations for [the plaintiff's] § 1983 conspiracy claim . . . is two years." (citing Va. Code Ann. §§ 8.01-243(A), 248)).  The defendants do not dispute that the statute of limitations for personal injury torts in West Virginia is two years (Dkt. No. 30-1 at 7).  W. Va. Code § 55-2-12(b).

Horton, who filed suit on October 15, 2014 (Dkt. No. 1-2 at 1), alleges that the conspiracy occurred between December 20, 2012, and June 18, 2014 (Dkt. No. 13 at 31).  The Court must look to federal law, however, to ascertain when a cause of action under § 1983 accrues.  <u>Id.</u>  Such an action accrues when the plaintiff "has a complete and present cause of action," meaning that he "can file suit and obtain relief."  <u>Wallace</u>, 549 U.S. at 388, 127 S.Ct. at 1094.  The earliest possible time that Horton's cause of action could have accrued is on December 20, 2012, when the hit and run incident occurred, and it is unlikely that it accrued even at that early date.  Regardless, Horton filed suit on October 15, 2014, less than two years after December 20, 2012.  Accordingly, the

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Court declines to dismiss Horton's civil conspiracy count as untimely under the applicable statute of limitations.

## II.  Defendant Scott

Horton has only named Scott in Count Seven of his amended complaint, in which he alleges that Scott conspired with the other defendants to violate Horton's First, Fourth, and Sixth Amendment rights by knowingly and intentionally extorting $ 5,000 from Horton to repair Woolmaker's vehicle and by imprisoning Horton on false criminal charges without probable cause (Dkt. No. 13 at 31).  Id. Horton asserts that Scott unconstitutionally searched his Jeep, seized his insurance information, and provided it to Vinson, resulting in false criminal charges.  Id.

The Court has already ruled that Horton has failed to state a cognizable claim in Count Seven of his amended complaint.  It therefore **GRANTS** Scott's motion to dismiss, and **DISMISSES** Count Seven **WITH PREJUDICE.**

## III.  Defendants Renzelli and Houchin

Renzelli and Houchin are named solely in Count Seven of the amended complaint, which alleges that they engaged in a civil conspiracy, along with Vinson and Scott, to violate Horton's First, Fourth, and Sixth Amendment rights (Dkt. No. 13 at 31).  Horton claims that Renzelli proximately caused his injuries resulting from

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

the assault at the jail, and asserts that Renzelli and Houchin "intentionally failed to cause the false criminal charges to be dismissed when the [criminal complaint] did not establish the essential elements of the offenses and there was no probable cause to believe Plaintiff committed any crimes." Id.

Renzelli and Houchin seek dismissal of Count Seven because (1) as public defenders, they are immune from suits arising out of the fulfilment of their job duties, and (2) Horton has failed to state a claim upon which relief may be granted (Dkt. No. 43 at 1).[19] Although the Court has already found that Horton has failed to state a cognizable claim under Count Seven, it will analyze, in the alternative, whether Renzelli and Houchin are absolutely immune from suit.

**A.    Absolute Immunity**

The Court's earlier finding regarding Horton's failure to allege a civil conspiracy under West Virginia law forecloses the need for much of Renzelli and Houchin's argument for immunity under W. Va. Code § 29-21-20 (Dkt. No. 44 at 6).   That provision immunizes court-appointed counsel from liability "arising from that representation" to the same extent that prosecuting attorneys are

---

[19] Renzelli and Houchin also sought dismissal based on the statute of limitations; as the Court has already ruled, however, Horton filed suit within the applicable statute of limitations.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

immune.  <u>Id.</u>; <u>see</u> <u>Mooney v. Frazier</u>, 693 S.E.2d 333 (2010) (noting that W. Va. Code § 29-21-20 is applicable to public defenders and private attorneys alike).  If § 29-21-20 applied, Renzelli and Houchin would enjoy absolute immunity so long as they engaged in conduct associated with their positions as public defenders. Because Horton has alleged a conspiracy to violate § 1983, however, the state law immunity provision does not apply.  <u>See</u> <u>Rehberg v. Paulk</u>, 132 S.Ct. 1497, 1502-03 (2012) (noting that the court looks to federal common law for guidance in determining the scope of immunities available in a § 1983 action).

Unlike West Virginia, the Supreme Court of the United States has declined to grant public defenders the same absolute immunity as prosecutors for § 1983 purposes.  <u>Polk County v. Dodson</u>, 454 U.S. 312, 317, n. 4 102 S.Ct. 445, 449 (1981); <u>Tower v. Glover</u>, 467 U.S. 914, 916, 104 S.Ct. 2820, 2826 (1984).  Instead, it has explained that public defenders generally do not act "under color of state law" within the meaning of § 1983 because they are not amenable to administrative direction by the state, which is obligated to respect the professional independence of public defenders.  <u>Polk</u>, 454 U.S. at 321-22, 102 S.Ct. at 451-52.  In <u>Polk</u>, the Supreme Court held that public defenders do not "act under color of state law when performing a lawyer's traditional

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

functions as counsel to a defendant in a criminal proceeding." Id. at 325, 102 S.Ct. at 453.

In Dennis v. Sparks, 449 U.S. 24, 27-28, 101 S.Ct. 183, 186 (1980), however, the Court held that an otherwise private person may act "under color of state law" when he engages in a conspiracy with state officials to deprive the plaintiff of federal rights. In Tower, the Supreme Court further explained that state public defenders sued under § 1983 are not immune for intentional misconduct stemming from an alleged conspiracy with state officials to deprive their client of federal constitutional rights. Tower, 467 U.S. at 923, 104 S.Ct. at 2826.

Renzelli and Houchin acknowledge that, under Tower, they are not immune from claims of intentional misconduct by virtue of any conspiratorial action with state officials that deprived Horton of his federal rights (Dkt. No. 44 at 10). They argue, however, that Horton has failed to plead sufficient facts to give rise to such an allegation. Id.

To adequately plead a § 1983 conspiracy, the plaintiff must present evidence that the defendants acted "jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the deprivation of a constitutional right." Massey v.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Ojaniit, 759 F.3d 343, 357-58 (4th Cir. 2014) (quoting Hinkle v.
City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996)).
Interestingly, Horton concedes that he has failed to state a
plausible § 1983 conspiracy claim against Renzelli and Houchin
(Dkt. No. 57 at 16). He notes that his amended complaint "contains
no allegations of fact suggesting that these defendants either
engaged in state action or a conspiracy with state actors to
violate plaintiff's constitutional rights," thereby necessitating
dismissal of his claim. Id. Horton's admission alone seems to
necessitate dismissal of Count Seven as to Renzelli and Houchin.
Horton, however, has also filed a motion seeking leave to amend his
amended complaint to remedy these deficiencies (Dkt. No. 50).

     **B.    Motion to Amend**

     On February 13, 2015, Horton moved for leave to amend his
amended complaint to add sufficient allegations of intentional
misconduct on the part of Renzelli and Houchin to state a § 1983
conspiracy claim under Tower (Dkt. No. 50 at 1-2). Following
Horton's admission that the allegations in his amended complaint
were insufficient to state a plausible claim, Renzelli and Houchin
sought permission from the Court to file an untimely response
opposing Horton's motion to amend the amended complaint (Dkt. No.
59). The Court granted that motion, and on April 22, 2015,

70

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Renzelli and Houchin filed a response opposing Horton's motion to amend as (1) in bad faith and (2) futile (Dkt. No. 62).

### 1. Applicable Law

Fed. R. Civ. P. 15 permits a plaintiff to amend his complaint "once as a matter of course" within either 21 days after serving the complaint or 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Although the grant or denial of a motion to amend is within the discretion of the Court, Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013), the Fourth Circuit has interpreted Rule 15(a)(2) to require that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962)).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Bad faith amendments are "abusive" or "made in order to secure some ulterior tactical advantage." GSS Props., Inc. v. Kendale Shopping Center, Inc., 119 F.R.D. 379, 381 (M.D.N.C. Mar. 15, 1988) (citing 6 C. Wright & Miller, Federal Practice and Procedure, § 1487 (updated Apr. 2015)); see id. (finding that plaintiff acted in bad faith when it withheld facts "clearly known to it prior to the filing of the complaint and then mov[ed] to amend the complaint . . ." to either force the defendant to settle or punish the defendant for failing to settle).

When a court inquires into the good faith of the moving party, it may take into account the movant's delay in seeking the amendment. 6 C. Wright & Miller, Federal Practice and Procedure, § 1487 (updated Apr. 2015). Delay alone "is an insufficient reason to deny the plaintiff's motion to amend." Hart v. Hanover Cty School Board, 495 F.App'x. 314 (Table) (4th Cir. 2012) (citing Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006) (en banc) (internal citations omitted)). Delay can be relevant, however, as an exacerbating factor to any finding of bad faith or prejudice. GSS Props., 119 F.R.D. at 381 (finding that blatant delay, in combination with bad faith, was sufficient to deny plaintiff's motion to amend).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

A court should deny leave to amend on the ground of futility only "when the proposed amendment is clearly insufficient or frivolous on its face." <u>Johnson</u>, 785 F.2d at 510. Conjecture about the underlying merits of the litigation should not enter into the court's decision as to whether to allow an amendment. <u>Davis v. Piper Aircraft Corp.</u>, 615 F.2d 606, 613-14 (4th Cir. 1980); <u>see</u> <u>Felman Prod., Inc. v. Indus. Risk Insurers</u>, No. 3:09-0481, 2010 WL 3119338, at *4 (S.D.W. Va. July 28, 2010) (declining to deny a motion to amend the defendant's counterclaims as futile when the plaintiff asked the court to weigh the evidence and delve into the merits of the case).

### 2. Analysis

Pursuant to Rule 15(a)(1), Horton is not entitled to amend his amended complaint as a matter of right because he previously availed himself of that privilege on December 18, 2014, when he filed his amended complaint (Dkt. No. 13). He admits that his sole purpose for filing a second amended complaint is to plead additional facts in Count Seven establishing Renzelli and Houchin's alleged intentional misconduct (Dkt. No. 50 at 2).

### a. Bad Faith

Renzelli and Houchin argue that Horton's proposed second amended complaint is in bad faith because he "seeks to add new and

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

additional facts which should have been part of his previous Complaints" in order to "tailor his allegations to avoid having his claim dismissed." (Dkt. No. 62 at 1,3). They contend that, although Horton was well aware of the relevant facts in his case for six months to a year before filing his amended complaint, he nonetheless failed to include them. <u>Id.</u> at 7. "Only after [Horton] became aware of the limitations on pleading 42 U.S.C. § 1983 claims through motions practice did [he] mention any of these new factual allegations . . . ." leading to the natural conclusion that he "has chosen to add these allegations in bad faith for the purpose of 'pleading around' the immunity . . . ." <u>Id.</u> Finally, Renzelli and Houchin argue that, if Horton were allowed to continue asserting additional facts <u>ad nauseum</u> "without regard to whether such amendments were made in good faith, pleading standards would be moot. Plaintiffs would be able to continue to test legal theories and factual allegations until they found the proper combination to survive motions to dismiss." <u>Id.</u>

Magistrate Judge Kaull found that Horton's second amended complaint was in bad faith, and recommended denying the motion to amend (Dkt. No. 64 at 32). He described the new allegations in Horton's second amended complaint before concluding that Horton clearly knew of these allegations when he filed his amended

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

complaint, but only included them after learning the limitations of

asserting a § 1983 claim against Renzelli and Houchin.  Id.

After considering the nature of the "new" allegations, the
time period between the amended complaint and Horton's motion to
amend, and Horton's professed motivation for amending his
complaint, the Court concludes that the second amended complaint is
in bad faith.  This case presents the unusual circumstance where
the plaintiff essentially admits he was unaware of the limitations
of his cause of action as pleaded, further admits that the facts in
his complaint are insufficient to satisfy that cause of action, and
nonetheless seeks to amend the complaint to allege additional
facts.  The Court declines to allow Horton to avoid pleading
standards by repeatedly amending his complaint after the opposing
party points out flaws in motions practice.  Horton had an
obligation "to introduce, at the earliest stage of the litigation
as possible, the matters upon which [he] want[s] to rely" to
support his claims.  GSS Props., 119 F.R.D. at 381.  He clearly
failed to do so.  Accordingly, the Court **FINDS** Horton's proposed
second amended complaint is in bad faith.

### b.    Futility

In the alternative, Renzelli and Houchin urge the Court to
deny Horton's leave to amend as futile (Dkt. No. 62 at 8).  They

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

note that the second amended complaint is "largely identical" to the amended complaint, and fails to cure the deficiencies of the amended complaint. Id. at 8-9. In his R&R, Magistrate Judge Kaull agreed, recommending denial of Horton's motion to amend as futile because the second amended complaint fails to allege any agreement to conspire, or any factual basis for the conspiratorial acts (Dkt. No. 64 at 33-34).

The Court may not consider the underlying merits of the litigation when determining whether amendment would be futile. Davis, 615 F.2d at 613-14. Rather, it should grant leave to amend unless the second amended complaint is "clearly insufficient" or "frivolous on its face." Johnson, 785 F.2d at 510. After its own review of the second amended complaint, and in accordance with its earlier ruling, the Court concludes it would be futile to allow Horton leave to amend because the "new" allegations are clearly insufficient to state a cause of action for civil conspiracy under § 1983.

As it pertains to Renzelli and Houchin, Count Seven in the second amended complaint largely mirrors its counterpart in the amended complaint. Horton has added a paragraph entitled "The Agreement," which discusses an alleged agreement between Vinson and Scott to violate his Fourth Amendment rights (Dkt. No. 50-1 at 31).

76

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

He has also added multiple "overt acts," twenty-seven of which involve either Renzelli or Houchin.  Id. at 33-42.  Of these overt acts, the Court is unable to ascertain any new factual allegations that were not present in the amended complaint.  Many of the overt acts are actually legal conclusions, for example, the twelfth overt act, which asserts that Renzelli's representation "fail [sic] below an objective standard of reasonableness guaranteed by the Sixth Amendment . . ." and that she was not constitutionally competent counsel (Dkt. No. 60-1 at 34-35).  The Court therefore **FINDS** that amendment would be futile because Horton's proposed second amended complaint fails to state a claim against Renzelli and Houchin.

In conclusion, the Court **DENIES** Horton's motion to amend his amended complaint (Dkt. No. 50), **GRANTS** Renzelli and Houchin's motion to dismiss (Dkt. No.  43), and **DISMISSES WITH PREJUDICE** Count Seven.

### SUMMARY OF RULINGS

For the reasons discussed, the Court:

- **ADOPTS** the report and recommendation (Dkt. No. 64);

- **DENIES AS MOOT** Vinson's first motion to dismiss (Dkt. No. 4) and Scott's first motion to dismiss (Dkt. No. 7);

- **GRANTS** Vinson's motion to dismiss (Dkt. No. 17) and **DISMISSES WITH PREJUDICE** Counts 1, 2, 3, 4, 5, 6, and 7 as to Vinson;

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 64] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS**

- **GRANTS** Scott's motion to dismiss (Dkt. No. 30) and **DISMISSES WITH PREJUDICE** Count 7 as to Scott;

- **GRANTS** Renzelli and Houchin's motion to dismiss (Dkt. No. 43) and **DISMISSES WITH PREJUDICE** Count 7 as to Renzelli and Houchin; and,

- **DENIES** Horton's motion to amend the amended complaint (Dkt. No. 50).

It is so **ORDERED**.

Pursuant to Fed. R. Civ. P. 58, the Court **DIRECTS** the Clerk of Court to enter a separate judgment order and to transmit copies of both orders to counsel of record and to the pro se plaintiff, certified mail, return receipt requested. It further **DIRECTS** the Clerk to remove this case from the Court's active docket.

Dated:  August 12, 2015.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE